GRAHAM *v.* FRED SANDERS COMPANY.

OPINION OF THE COURT.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENE-
FITS—LABOR DISPUTE.

An individual shall be deemed disqualified for unemployment
compensation benefits if his unemployment is due to a labor
dispute in the establishment in which he is or was last
employed (CL 1948, § 421.29, as amended by PA 1963, No
226).

2. SAME—EMPLOYING UNIT—ESTABLISHMENT—DISQUALIFICATION FOR
BENEFITS.

Functional integration of employing units does not necessarily
make them a single establishment so that employees of one
unit who become unemployed due to a labor dispute in an-
other unit would be disqualified for unemployment compensa-
tion benefits under the terms of the employment security act
(CL 1948, § 421.29, as amended by PA 1963, No 226).

3. SAME—EMPLOYING UNIT—ESTABLISHMENT—DISQUALIFICATION FOR
BENEFITS.

The tests of functional integrality, general unity, and physical
proximity are not to be regarded as absolutes in determining
whether or not a single employing establishment exists, al-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 10–12] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds § 36.
[2, 5–9] 48 Am Jur, Social Security, Unemployment Insurance, and
Retirement Funds §§ 24–27, 36.
[3] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 24–27.
[4] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds § 49.
[13] 5 Am Jur 2d, Appeal and Error § 1011.
[14] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds § 43.
[15] 2 Am Jur 2d, Administrative Law §§ 610, 675, 676.

though they are indications that a single establishment *might* exist within meaning of employment security act (CL 1948, § 421.29, as amended by PA 1963, No 226).

4. SAME—APPEAL AND ERROR—FINDINGS OF FACT.

    A reviewing court must accept the findings of fact by the employment security appeal board if they are supported by the great weight of the evidence, but this does not preclude a court from reviewing the appeal board's application of law or its reasoning process (CLS 1961, § 421.38).

5. SAME—EMPLOYING UNIT—ESTABLISHMENT.

    The employment security act contemplates that 1 employing unit may operate more than 1 establishment, and that nonstriking employees employed in other establishments will not be disqualified for benefits by the existence of a strike in 1 establishment (CL 1948, § 421.29, as amended by PA 1963, No 226).

6. SAME—EMPLOYING UNIT—ESTABLISHMENT—DISQUALIFICATION FOR BENEFITS.

    The employment security act preserves the right to compensation for nonstrikers employed in a separate establishment functionally integrated with the struck establishment provided that the nonstrikers are not directly involved in the strike (CL 1948, § 421.29, as amended by PA 1963, No 226).

7. SAME—EMPLOYING UNIT—ESTABLISHMENT—DISQUALIFICATION FOR BENEFITS.

    The character of the local workers' employment and the character of the place in which it is performed are to be considered along with functional integrality and general unity in determining whether a single establishment exists which would disqualify nonstriking workers for benefits under employment security act (CL 1948, § 421.29, as amended by PA 1963, No 226).

8. SAME—EMPLOYING UNIT—ESTABLISHMENT—DISQUALIFICATION FOR BENEFITS.

    Unemployment compensation claimants *held*, to be employed in an establishment separate from strikers within meaning of employment security act where one work force is engaged in production and one in sales, seniority of claimants is separate from seniority of strikers, and there are separate work contracts covering claimants and strikers even though strikers and claimants were under the same executive supervision and the work of claimants was geared to the work of strikers (CL 1948, § 421.29, as amended by PA 1963, No 226).

9. SAME—UNEMPLOYMENT CAUSED BY LABOR DISPUTE—DISQUALIFICA-
TION FOR BENEFITS—DIRECT INVOLVEMENT IN LABOR DISPUTE.

> Employees, in the same employment unit as strikers, who be-
> come unemployed as a result of the strike may be disqualified
> for unemployment benefits even if they are in a separate
> establishment if they are directly involved in the labor dispute
> (CL 1948, § 421.29, as amended by PA 1963, No 226).

10. SAME—DISQUALIFICATION FOR BENEFITS—WORDS AND PHRASES—
DIRECTLY INVOLVED.

> A person is "directly involved" in a labor dispute, within
> meaning of employment security act, if he is directly
> interested in the outcome of that dispute (CL 1948, § 421.29,
> as amended by PA 1963, No 226).

11. SAME—DISQUALIFICATION FOR BENEFITS—DIRECT INVOLVEMENT
IN LABOR DISPUTE.

> A person who becomes unemployed as a result of a labor dis-
> pute is directly interested in that dispute if there is a
> reasonable expectation—based on practice, custom, or con-
> tractual obligation—that his wages, hours, or working con-
> ditions will be affected by the outcome of that dispute (CL
> 1948, § 421.29, as amended by PA 1963, No 226).

12. SAME—DISQUALIFICATION FOR BENEFITS—DIRECT INVOLVEMENT
IN LABOR DISPUTE.

> Employment security appeal board finding that claimant, retail
> grocery supermarket concession employee of defendant bakery,
> was directly interested in the outcome of a labor dispute
> because she could reasonably expect the gains negotiated by
> the 3 unions involved in the dispute with her employer were
> also to be given to her union, *held*, not supported by the
> evidence, where the evidence only showed that the 3 unions
> in the dispute were represented by one council and that
> bargaining for all 3 went on at one time, and there was no
> evidence to support the finding that claimant's separate local
> union ever participated in the bargaining of the other 3 (CL
> 1948, § 421.29, as amended by PA 1963, No 226).

13. COSTS—UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR
BENEFITS.

> No costs are allowed on appeal from judgment of trial court
> reversing finding of employment security appeal board that
> claimant was disqualified for unemployment compensation
> benefits (CL 1948, § 421.29, as amended by PA 1963, No
> 226).

14. Unemployment Compensation—Appeal and Error—Finding of Fact—Employing Unit—Establishment—Disqualification for Benefits.

> An employment security appeal board finding that claimants and strikers were employed in the same establishment is not a conclusion of law rather than a conclusion of fact merely because the facts were undisputed.

15. Appeal and Error—Findings of Administrative Agencies—Inferences.

> The courts are bound to accept not only the factual findings of an administrative agency, but also the permissible inferences which they have drawn from undisputed facts.

Appeal from Wayne, Kaufman (Charles), J. Submitted Division 1 March 9, 1967, at Detroit. (Docket No. 2,599.) Decided May 27, 1968.

Margaret Graham and others applied to the Employment Security Commission for unemployment compensation benefits after being laid off by their employer, Fred Sanders Company, a Michigan corporation. Application denied. Applicants appealed to the Employment Security Appeal Board. Affirmed. Applicants appealed to Wayne circuit court. Reversed. Employment Security Commission appeals. Affirmed.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Arthur W. Brown,* Assistant Attorney General, for defendant commission.

Lesinski, C. J. The plaintiffs were employed at concessions operated by the Fred Sanders Company

in various supermakets in the metropolitan Detroit area. They were laid off for five weeks when, on August 31, 1964, Sanders' bakery employees went on strike. This appeal presents the question whether the plaintiffs are entitled to unemployment compensation benefits for that five-week period.

Their claims for compensation were denied at the determination and redetermination stages, and on appeal to a referee. The referee found that the plaintiffs were employed in the same establishment employing the striking bakery workers. The referee also found that the claimants were "directly interested" in the labor dispute within the meaning of subsection 29(1)(b) of the employment security act.[1] The referee's findings were adopted verbatim by the employment security appeal board. The circuit court reversed the appeal board. The employment security commission appeals the circuit court's decision.

Approximately 800 production employees work at the Sanders factory on Oakman boulevard. Approximately 1,000 additional persons work at the 53 retail stores operated by Sanders. Fifty sorters and truck drivers are also employed by Sanders. Each of these three groups of employees constitutes a separate bargaining unit represented by Council 30, United Distributive Workers, AFL-CIO. The 47 plaintiffs are among 130 persons employed at 58 supermakets, constituting a separate bargaining unit represented by Local 876, Retail Store Employees Union, AFL-CIO.

It was stipulated before the employment security commission that Local 876 was the sole and exclusive

---

[1] PA 1936 (ex sess) No 1, CL 1948, § 421.1 et seq. as last amended by PA 1963, No 226 (Stat Ann 1960 Rev and 1963 Cum Supp § 17.501 et seq.), hereinafter referred to as the act. (The specific section is CL 1948, § 421.29, as amended by PA 1963, No 226 [Stat Ann 1963 Cum Supp § 17.531]).

bargaining agent for all employees in retail outlets maintained by Sanders in retail grocery supermarkets in this State; that seniority of Local 876 members is limited to retail grocery outlets; that members of Local 876 constitute a separate bargaining unit for purposes of collective bargaining; that bargaining between Local 876 and Sanders is conducted separately from other employees; that the collective bargaining agreement makes no reference to Council 30 and has no automatic carry-over provisions relating to Council 30's contract; that Local 876 members did not finance the dispute, paid no money to Council 30; that Local 876 members ceased work at Sanders' direction; and that Local 876 members did not picket.

The agreements with the three bargaining units represented by Council 30 expired August 31, 1964. The agreement with Local 876 covering the plaintiffs had expired on May 16, 1964. No agreement with any of the four bargaining units was reached until after the strike ended. Contracts were signed covering the bakery workers on October 14, 1967. Contracts with the other 2 bargaining units represented by Council 30 followed. The contract with Local 876 covering the plaintiffs was signed November 25, 1964.

Sanders maintains a central office adjacent to its manufacturing plant. All management policies concerning employment, personnel relations, and merchandising emanate from this point. All employment applications, hiring, and discharges are cleared through the industrial relations department at the central office, but interviewing of applicants is often done at the locale where the vacancy exists.

Employees at both Sanders-operated retail stores and at supermarket concessions are supervised by "retail distributing managers." The retail distrib-

uting managers report directly to the operations manager in the central office.

Section 29(1)(b) of the act provides, in part (more on this later), that an individual shall be deemed disqualified for benefits if his unemployment is due to a labor dispute "in the establishment in which he is or was last employed."

The principal issue in this appeal is whether the plaintiffs were employed in the establishment in which the labor dispute was in progress, the employment security commission and the employer asserting—and the plaintiffs denying—that the nonstriking plaintiffs and the striking bakery employees were all employed in the same "establishment". Concedely the functions of the two groups of employees, bakery and sales, were integrated in that without the other neither could continue to operate.

In the case that came to be known as the "Ford Canton" decision, *Park* v. *Employment Security Commission* (1959), 355 Mich 103, the Court held that functional integration of a company's manufacturing plants located in Michigan and several other States did not necessarily make them a single "establishment" within the meaning of the act. The Court drew a distinction between "employing unit", which is defined in the act, and "establishment", which is not defined in the act.

The *Park* Court expressly adopted language from *Nordling* v. *Ford Motor Company* (1950), 231 Minn 68 (42 NW2d 576). In *Nordling, supra,* the tests of functional integrality, general unity, and physical proximity were not regarded as absolutes of what is *"the* establishment".

More recently, in *Northwest Airlines, Inc.* v. *Employment Security Commission* (1966), 378 Mich 119, 129, four justices stated that the employees' relationship to the unit of employment, rather than

the extent of integration or unification of the employer's enterprise, was determinative.

"The *Park Case* thus defined 'establishment' in terms of a distinct physical place of business, necessarily localized in character. In so deciding, *Park* placed substantial reliance upon *Nordling* v. *Ford Motor Company, supra,* which posed a similar problem. *Nordling* held that a determination of whether a unit of employment is a separate 'establishment' within the meaning of the disqualifying provisions of their employment security law must be based *upon all the facts relating to the relationship of the employee to the unit of employment,* rather than on a determination of whether an entire enterprise or industry is highly integrated as to operating units or unified for the purpose of efficient management or production."

The referee, whose findings were adopted by the appeal board, stated that *Park* "overruled functional integration as the basic test" and then went on to say that "while a finding of functional integration is not wholly determinative of the issue, it is one of the key factors to be considered." The referee stressed the following:

1. The plaintiffs were hired and separated from their employment by the same employment manager and personnel director who discharged such functions as to the striking employees.

2. There was no independent managerial staff at any of the supermarket outlets where the plaintiffs work and they performed their function under the same general supervision as the striking employees.

3. Production schedules in the factory were geared to the sales of the company's products in the retail store and supermarkets outlets.

Since the direct supervision of the plaintiffs at the supermarket outlets was by personnel who did

not supervise the *striking*[2] employees, the referee's finding that the striking employees were "under the same general supervision as the hourly-rated workers" must refer to overall executive supervision. Thus, the underlying fact findings upon which the referee concluded there was only one establishment to analyze:

1. The plaintiffs and the strikers were under the same executive supervision (and, in particular, were hired and fired through the same personnel office), and

2. Production schedules were geared to retail sales.

In *Park*, production of the nonstrikers was shut down because of the strike at Canton, Ohio. Production at Canton was geared to production by the nonstrikers, and vice versa. The employees at Canton, like the plaintiffs, were under the same overall executive supervision. That was not regarded by the Court as determinative. The additional factor here present, namely, that the plaintiffs and the bakery employees were hired and fired through the same personnel office does not justify the appeal board's determination that they were all employed in "the establishment." See *Northwest Airlines, supra*, page 133, where that factor was also present and was not regarded as decisive.

[2] The retail distributing managers supervised, presumably on a regional basis, employees both in the retail stores operated by Sanders and those in the supermarket concessions selling Sanders' products. A finding would have been justified that the working conditions and other facts relating to the relationship of the employees to their unit of employment were similar as to both the *retail* employees represented by Council 30 and the supermarket employees represented by Local 876. However, the question before the referee and before us is whether the supermarket employees and the *bakery* employees were in the same establishment, not whether the employees employed in the supermarkets and those employed in *retail* stores were in the same establishment. It is not claimed that the retail distributing manager supervised bakery employees, or that the conditions of employment at the bakery were anything like those at the supermarkets.

The presence of functional integrality and overall executive supervision suggests that both work forces *might* be part of one establishment—it does not by any means end the inquiry. The referee, although he paid lip service to *Park's* overruling of functional integrality as the "basic test," stating it remains merely one of the *"key* factors"—a term which does *not* appear in *Park, Nordling* or *Northwest*—in fact proceeded on the assumption that functional integrality remains *the* key factor. Indeed, a comparison of the referee's findings of fact with his conclusions persuaded us that the referee considered functional integrality and functional integrality alone.

This Court recognizes it is bound under section 38 of the act[3] to accept findings of fact made by the appeal board if they are supported by the great weight of the evidence. This limitation on our reviewing function does not, however, preclude the circuit court or this Court from reviewing the appeal board's application of the law or its reasoning process. In this case there was no dispute as to the underlying facts. There were no inferences to draw, and the referee drew none. The disagreement concerns the application and interpretation of the undisputed facts in deciding what is "the establishment." We note that in *Northwest* the dissenting opinion began (p 136) :

"The trial court correctly stated that 'since the factual aspects are not in question, adjudication of the issue presented requires only the proper application of the law to the facts.' "

The majority opinion in *Northwest* likewise made its own independent evaluation based upon the undisputed facts there presented.

---

3 CLS 1961, § 421.38 (Stat Ann 1960 Rev § 17.540).

The act contemplates that one employing unit may operate more than one establishment, and that nonstriking employees employed in other establishments will not necessarily be disqualified for benefits. Unity of management, overall executive supervision and functional integrality cannot be determinative because if they are then there would be few, if any, separate establishments. Indeed, the 1963 amendment (see footnote 4, *infra*) in preserving the right to benefits of nonstrikers employed in a separate establishment functionally integrated with the striking establishment, provided that the nonstrikers are not directly involved in the strike, is a legislative mandate requiring payment of benfits to such nonstrikers despite the presence of functional integrality. In this case, except for functional integrality and overall executive supervision (including the centralization of one aspect of the employment relationship, *i.e.*, hiring and firing) there was *no* relationship between the striking bakery employees and the nonstriking supermarket employees. The bakery employees, who worked in the factory, constituted a work force separate and apart, physically and functionally, from plaintiffs who worked in supermarkets scattered throughout the metropolitan Detroit area.

"The *circumstances of employment,* rather than those of management and operation, are of primary importance in determining the unity and integration, or the lack of unity and integration, of the plants." *Ford Motor Co.* v. *Unemployment Compensation Commission* (1951), 191 Va 812, 824, 825 (63 SE2d 28), quoted with approval in *Park* v. *Employment Security Commission, supra,* p 124. (Emphasis supplied.)

"The *Park Case* then commands us to look not alone to functional integrality, general unity, and physical proximity as a test but to other factors

as well, *from the standpoint of the worker's employment.*" *Northwest Airlines, supra,* p 133.

In *Northwest,* the controlling opinion stressed (p 133) "the character of the local workers' employment and the character of the place in which it was performed."

The controlling opinion in *Northwest* emphasized that the service of the striking employees was primarily rendered in flight, while the nonstrikers worked on the ground. The minority in *Northwest* stressed the work contact side-by-side of striking and nonstriking employees. Here the nonstrikers rendered their services at locations both separate from and of an entirely different nature than the factory at which the strikers worked. There was no work contact between the striking bakery and the nonstriking supermarket employees. The nonstriking supermarket employees did not share common seniority rights with any other Sanders' employees, nor was there any right to "bump" employees except within the unit of which they were a part.

The relationship of the plaintiffs and of the bakery employees to their units of employment is entirely different. One work force was engaged in production, another in sales. Perhaps most importantly, the aptitudes, skills, and labor required of, and working conditions affecting, one work force are entirely different from those in respect to the other.

Both the referee and appeal board wrote prior to *Northwest.* Applying the principles laid down in *Park, Nordling* and *Northwest* to the case at bar, we conclude, as did the trial judge, that the facts found by the referee and the appeal board demonstrate the claimants were employed in an establishment separate and apart from that of the striking employees. An erroneous application of the law governing the matter gave rise to the referee and

appeal board finding that the striking employees and the plaintiffs were part of the same establishment.

The decision in *Park* drew its reaction in the legislative halls of this State. After attempts for several years legislatively to reverse the rule laid down in *Park*, section 29 was amended in 1963.[4] The amendatory act did not overrule *Park*. It did not purport to change the definition of "the establishment." It did not prescribe that the presence or absence of functional integrality would determine whether there was one or more than one establishment.

Prior to the 1963 amendment, one could only be disqualified if his unemployment was due to a labor dispute in *the* establishment in which he was employed. The 1963 amendment provides that one could also become disqualified if the dispute was in "any *other* establishment" within the United States functionally integrated with such establishment and operated by the same employing unit. We have already held that the striking bakery employees and nonstriking supermarket employees were employed in separate establishments. They were, however, establishments functionally integrated with each other.

Much-amended section 29 is not a stellar example of legislative draftsmanship. It reflects the give and take that went into the compromise which was effected in the adoption of the 1963 amendatory act. The 1963 act assumes, indeed it states, that functional integrality can exist among two or more separate establishments and yet disqualification does not necessarily follow. The act provides that no individual shall be disqualified if he is not "directly involved" in the dispute. The employment security

4 PA 1963, No 226.

commission asserts the plaintiffs are described in clauses II and IV of the amendatory act's definition of "directly involved"; that they were "directly interested" in the dispute (clause II); and their unemployment was due to a labor dispute which was in progress "in any department or unit or group of workers in the same establishment (clause IV)."

Where there is only a single establishment, disqualification of all employees under clause IV is automatic. Where there is more than one establishment, those employed in the dispute establishment are automatically disqualified under clause IV. The clause IV "directly involved" definition does not, however, disqualify employees in an establishment other than the dispute establishment, even if both establishments are functionally integrated.

Although the referee found that both work forces were employed in the same establishment, he did not rest their disqualification as "directly involved" on clause IV alone. He went on to find that the nonstriking plaintiffs were "directly interested" (clause II of the directly involved definition), because they could reasonably expect that some of the benefits and advantages derived from the negotiation and resolution of the labor dispute between the bakery employees and Sanders would be passed on to them. Since, if true, this would disqualify the plaintiffs even though employed (as we have concluded) in *another* establishment separate from that of the striking bakery employees, it becomes necessary to consider the referee's finding in that regard.

The amending act also defines "directly interested," stating that term shall be construed and applied to disqualify individuals whose wages, hours or other conditions of employment "may reasonably be expected to be affected by the resolution of such labor dispute." The amending act also contains a definition of "reasonable expectation." It is

stated that in the absence of substantial and preponderating evidence to the contrary, a reasonable expectation shall be deemed to exist[5]

"if it is established that there is in the particular establishment or employing unit a practice or custom or contractual obligation to extend within a reasonable period to members of the individual's grade or class of workers in the establishment in which the individual is or was last employed changes in terms and conditions of employment which are substantially similar or related to some or all of the changes in terms and conditions of employment which are made for the workers among whom there exists the labor dispute which has caused the individual's total or partial unemployment."

The referee's decision, adopted by the appeal board, found the plaintiffs were "directly interested" based on the following (referee decision, pp 9, 10):

"As to II, i.e., pertaining to direct interest on the part of these claimants; although it was conceded that there was no 'automatic carryover' or extension of benefits or other advantages derived from negotiations or contracts with other employee units, nevertheless, there was also reliable testimony that in practice, this has been followed to a material extent in the past.

"This practice over the years has established a pattern that the employees in this unit did, in fact, benefit from the provisions of the bargaining contract applicable to other groupings or units or workers. It was also shown that the representatives of these workers, Local 876, were present and sat in on the discussions and meetings pertaining to the other bargaining contracts prior to their adoption

---

[5] There are additional definitions of "reasonable expectation" but it is not claimed that any of the other definitions are applicable in this case.

or agreement. These representatives negotiated with the same representatives of management and usually at the same location."

The record does not, however, support such findings. It would appear those findings are based on the testimony of Sanders' industrial relations director and Sanders' exhibit 1. Both that testimony and exhibit purported only to cover the history of extension of contract benefits in respect to the three bargaining units represented by Council 30. Nor was there any evidence that supports the finding that representatives of Local 876 sat in on the Council 30 negotiations covering its three bargaining units. In summary, there is simply no evidence whatsoever to support the referee's finding that the nonstriking plaintiffs were "directly interested" on the basis of a reasonable expectation grounded in a past practice or custom to extend contract gains to them.

In addition, we note that the employer's legal counsel expressly stated he would not contend there was such a pattern or practice of extension of contract benefits as to the Local 876 members, and that as to the Local 876 members the employer contended "simply they are in the same establishment, and we are not going to argue anything more complicated than that. This is complicated enough." The plaintiffs' attorney later stated that in view of that statement, he would not offer evidence to negative "a carryover or an agreement to carry over." We need not in this case consider whether the just mentioned understanding of counsel was binding on the employment security commission, but we are satisfied the referee and appeal board could not make findings of fact inconsistent therewith without giving the parties an opportunity to offer evidence addressed to the matter.

The judgment of the trial court is affirmed. No costs.

LEVIN, J., concurred with LESINSKI, C. J.

J. H. GILLIS, J. (*dissenting*). In *Park* the Supreme Court reversed the appeal board's denial of compensation because the "basic disqualification" finding required in the first sentence of section 29(1)(b) was not supported by the record, the "basic disqualification" then being unemployment "because of a labor dispute in the establishment in which [claimant was] last employed." Unlike my colleagues, I conclude that *Park* is now obsolete on the point cited because of the 1963 amendments which expanded the definition of the "basic disqualification" to cover unemployment caused by a labor dispute in any other establishment "functionally integrated" with the establishment last employing the claimant. Indeed, the record below and the briefs here disclose no dispute between the parties that an amended basic disqualification applies to the claimants. Issue is joined, however, on whether the claimants were "directly involved" in the labor dispute within the meaning of the last of the tests set forth in subsections I, II, III and IV of section 29(1)(b), which provides:

"No individual shall be disqualified under this paragraph (b) if he is not directly involved in such dispute. For the purposes of this paragraph (b), no individual shall be deemed to be directly involved in a labor dispute unless it is established that:
* * *

"IV. His total or partial unemployment is due to a labor dispute which was or is in progress in any department or unit or group of workers in the same establishment."[1]

---

[1] I disagree with my colleagues that disqualification under this clause is automatic if employment in the dispute establishment is

Subsection IV was likewise added in 1963 after the decision in *Park*. We must assume, since the legislature was careful to avoid *Park's* import by adding to the pre-1963 "basic disqualification," that when the fourth condition precedent to a finding of direct involvement was added, *i.e.*, "a labor dispute * * * in the same establishment," the legislature did not intend "same establishment" to include an establishment different from but functionally integrated with the establishment in which the claimant was last employed. Such a construction of subsection IV would make it redundant with the basic disqualification. In this respect, I am in agreement with my colleagues. Our disagreement is over the nature and validity of the appeal board's findings of fact.

The appeal board adopted the referee's finding that the supermarket outlets, the Sanders retail stores and the bakery were one establishment. My colleagues affirm the rejection of that finding of fact by the lower court, concluding that since the facts were undisputed there is in reality but a question of law to be decided. This, in my judgment, is an unwarranted judicial invasion of the decision-making powers granted to the appeal board by the legislature. Even on undisputed facts different permissible inferences may be drawn in reaching the ultimate fact. Here the appeal board found that there was but one establishment. I cannot agree that as a matter of law they are wrong. The courts are bound to accept not only the factual findings of an administrative agency based upon a disputed record, but also the permissible inferences which they have drawn from undisputed facts.[2]  *Cf. Baugh-*

---

proven. (*ante*, p 374.)  This is but a condition precedent to a finding of direct involvement which would disqualify an employee from benefits.

[2] For this reason, *Northwest* is not in point.  Aside from the fact that *Northwest* construed the statute as it was before 1963,

*man* v. *Vicker's Inc.* (1949), 323 Mich 710, 715. There is respectable authority that even as to questions of law, though the courts are not bound by an administrative agency's conclusions, they should be reluctant to overturn them and should give these conclusions of law special consideration "in light of the commission's long record of practical experience with this subject and its responsibility for the administration and enforcement of this law." *Levinson* v. *Spector Motor Service* (1947), 330 US 649, 672 (67 S Ct 931, 91 L Ed 1158).

The appeal board did not rely upon functional integration alone in determining that the supermarket outlets, the bakery and the retail stores constituted one establishment. Even though the referee, perhaps improperly, relied in part upon the fact that production schedules were geared to sales of the company's products in the store outlets and supermarkets, this would not in my judgment be sufficient basis for setting aside the administrative finding of one establishment. The referee's opinion makes it clear that this was not the determinative factor in his decision.

"The undisputed facts in the instant case clearly establish that these claimants, members of Local 876, performed their services under the same general supervision as the hourly-rated workers at Oakman Boulevard who went out on strike August 31, 1964, and which resulted in the unemployment of these claimants. Although they have their own local union and seniority lists, the other factors pointed out [in *Park* which militated against a finding of one establishment] are not present.

it was a 4–1–3 decision upholding the appeal board's grant of compensation based upon its finding of separate establishments. Had the appeal board reached a contrary conclusion, that, too, might well have been affirmed by an equally divided Court. See Justice BLACK's concurring opinion, 378 Mich at 135.

"In the very nature of the setup, the production schedules in the factory are geared to the sales of the company's products in the store outlets and supermarkets. There is only one industrial relations director, and only one general employment office. These cover all groups or classes or units of employees. These facts support a finding that these claimants were employed in the 'same establishment' and their unemployment was due to the labor dispute in active progress in this establishment. Membership in a separate union, with a separate bargaining agreement, is not inconsistent with this finding." (Referee's opinion p 8.)

My colleagues' opinion leaves unclear whether each of the supermarket outlets constitutes a separate establishment. They expressly decline to determine whether the supermarket outlets constitute one establishment separate from the retail stores. In other words, the majority opinion here rejects the finding of the appeal board without giving it useful guidelines to follow in future decisions.

I would reverse the decision of the court below and affirm the appeal board's denial of compensation.