NOBLIT *v* THE MARMON GROUP

1. Unemployment Compensation—Employment Security Act—
Legislative Purpose.

   The Employment Security Act is intended to provide relief from the hardship caused by involuntary unemployment, that is the broad legislative purpose and it deserves liberal application by the courts, but equally deserving of judicial cognizance and respect are the specifics of that act.

2. Unemployment Compensation—Disqualification for Benefits
—Labor Dispute—Establishment.

   The legislature has declared that unemployment benefits shall not be paid when "unemployment is due to a labor dispute which was or is in progress in any department or unit or group of workers in the same establishment" (MCLA 421.29 [8][a][IV]).

3. Unemployment Compensation—Disqualification for Benefits
—Establishment.

   Involuntary unemployment of a foundry's teamster union truck drivers, due to a strike by its members of a foundry workers union, was a category of involuntary unemployment which the legislature has specifically excluded from eligibility for unemployment compensation benefits (MCLA 421.29[8][a][IV]).

4. Unemployment Compensation—Employment Security Act—
Legislative Policy—Labor Dispute—Presumptions.

   The legislative policy of the Employment Security Act is not only to relieve from involuntary unemployment, but to do so

References for Points in Headnotes

[1] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Funds § 10.
[2] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Funds § 36.
Construction and effect of provision in mineral lease excusing payment of minimum rent or royalty. 28 ALR2d 1013.

in a manner calculated to avoid any encouragement of work stoppages arising out of labor disputes; this, the legislature has chosen to do in part by declaring a conclusive presumption that there is such a community of interest between the employees of a single establishment that it is impractical to attempt to distinguish between those employees, whose unemployment is due to the vicissitudes of the market place, and those whose unemployment is due to the breakdown of internal labor management relations.

Appeal from Court of Appeals, Division 2, McGregor, P. J., and Bronson and Mahinske, JJ., affirming Ingham, Donald L. Reisig, J.    Submitted November 4, 1971.    (No. 32 October Term 1971, Docket No. 52,993.)    Decided February 25, 1972.

25 Mich App 432 affirmed.

Claim by Walter G. Noblit and other employees of The Marmon Group (Midwest Foundry Division) for unemployment compensation.    Benefits denied. Plaintiffs appealed to circuit court.    Affirmed. Plaintiffs appealed to the Court of Appeals.    Affirmed.    Plaintiffs appeal.    Affirmed.

*Sinas, Dramis, Brake & Turner, P. C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

T. E. BRENNAN, J. This is an unemployment compensation case.

The employment security appeal board denied benefits. The circuit court and the Court of Appeals affirmed.

We granted leave to appeal,

"In the light of the holding of the Court of Appeals in *Graham* v *Fred Sanders Co.,* 11 Mich App 361 [1968], and *Northwest Airlines, Inc* v *Employment Security Commission,* 378 Mich 119 [1966], and the fact that the Unemployment Security Act should be liberally construed for the benefit of those involuntarily unemployed."*

The Employment Security Act is intended to provide relief from the hardship caused by involuntary unemployment. That is the broad legislative purpose. It deserves liberal application by the courts.

But equally deserving of judicial cognizance and respect are the specifics of the Employment Security Act.

It would have been simple enough for the legislature to provide unemployment benefits for all persons involuntarily unemployed.

The legislative process is more complex than merely a forum in which broad goals are agreed upon. The Employment Security Act is a detailed legislative enactment, embodying the ultimate agreement of the representatives and senators upon a scheme of unemployment compensation, and reflecting their compromise of various policy considerations affecting the nature and extent of benefits to be awarded and the circumstances under which other policy considerations warranted the conclusion that no benefits should be paid at all.

The legislature has declared that benefits shall not be paid when

" * * * unemployment is due to a labor dispute which was or is in progress in any department or unit or group of workers in the same establishment." MCLA 421.29(8)(a)(IV); MSA 17.531(8)(a)(IV).

---

* The quotation is from an inter-office memorandum circulated by one of the Justices at the time application for leave was under consideration in this Court.

The defendant foundry has only one place of business. It is a plant located in Coldwater, Michigan. Claimants are truck drivers and members of the teamsters union. They reported for work at the foundry, made deliveries to the Company's customers and returned to the plant. They were paid on a mileage basis.

Their unemployment in this case is clearly and concededly due to a strike by the foundry workers, members of the International Molders and Foundry Workers Union. The foundry workers were employed at the one and only plant of the defendant.

The truck drivers were not involved in the strike. They did not refuse to cross picket lines, and in fact did make deliveries on the first day of the strike.

There is no question that the unemployment of the truck drivers was involuntary. Likewise, there is no question that the involuntary unemployment of the truck drivers was a category of involuntary unemployment which the legislature has specifically excluded from eligibility for unemployment compensation benefits.

There is only one establishment in this case. All of the defendant's employees are employed at that one establishment. Were we to engage in fancy linguistic footwork to conclude otherwise, we would be defeating, not advancing, the declared legislative policy.

That policy is not only to relieve from involuntary unemployment, but to do so in a manner calculated to avoid any encouragement of work stoppages arising out of labor disputes. This, the legislature has chosen to do in part by declaring a conclusive presumption that there is such a community of interest between the employees of a single establishment that it is impractical to attempt to distinguish between those employees, whose unemployment is

due to the vicissitudes of the market place, and those whose unemployment is due to the breakdown of internal labor management relations.

The *Graham* and *Northwest Airlines* cases are inapposite. In *Graham,* the claimants were employed at local retail bakery outlets, and the strike was at the main bakery facility. In *Northwest,* the claimants were employed in Michigan ticket and airport operations; the strike was by flight engineers based in other states.

Neither *Graham* nor *Northwest* involved an employer with a single operational establishment.

Affirmed. Costs to the defendants.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

SWAINSON, J., concurred in the result.