·MICHIGAN TOOL COMPANY *v.* EMPLOYMENT SECURITY
COMMISSION.

1. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS
—QUESTION FOR TRIER OF FACTS..

   Whether or not claimants for unemployment compensation were
   disqualified for benefits was a question of fact under evidence
   presented wherein claimants charged the employer with a speed-
   up and the employer charged the employees with a slowdown
   (CLS 1952, § 421.29);

2. SAME—CERTIORARI—GREAT WEIGHT OF EVIDENCE.

   A circuit court on certiorari to the appeal board of the employ-
   ment security commission may reverse the board's findings of
   fact only if they are contrary to the great weight of the evi-
   dence (CLS 1954, § 421.38).

3. SAME—APPEAL BOARD'S FINDING AS TO SLOWDOWN—GREAT WEIGHT
OF EVIDENCE.

   Finding of the appeal board of the employment security com-
   mission that the production of the employer's plant was not
   impaired by any of the matters in dispute at conferences be-
   tween the parties, with the possible exception of the claimed
   slowdown, and that the slowdown had not been established by
   the evidence submitted, *held,* not contrary to the great weight
   of the evidence (CLS 1954, § 421.38).

4. SAME—ELIGIBILITY FOR BENEFITS—BURDEN OF PROOF.

   .Generally, the burden of establishing eligibility for benefits under
   the employment security act is upon claimants therefor.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 48 Am Jur, Social Security, Unemployment Insurance, and
   Retirement Funds § 34 *et seq.*
[2] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
   tirement Funds § 49.
[6] 20 Am Jur, Evidence § 142.

5. SAME—DISQUALIFICATION FOR BENEFITS—SLOWDOWN—BURDEN OF PROOF.

  The burden of proving that there had in fact been a slowdown in the employer's plant so as to disqualify employees therein from claiming benefits is cast upon the employer, since the facts which would prove a slowdown are peculiarly within the knowledge and control of the employer (CLS 1952, § 421.-29).

6. TRIAL—BURDEN OF PROOF—BENEFITS UNDER AN EXCEPTION IN A STATUTE.

  The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests upon the one who claims its benefits to undertake the proof.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 5, 1956. (Docket No. 8, Calendar No. 46,747.) Decided October 1, 1956.

Certiorari by Michigan Tool Company, a Delaware corporation (Cone-Drive Gears Division), against Michigan Employment Security Commission, its appeal board, and Joseph Chile, a claimant, together with 128 other claimants, to review awards of unemployment compensation. Awards set aside and claimants disqualified for benefits. Defendant claimants appeal. Reversed and remanded for reinstatement of awards.

*Dahlberg, Simon, Jayne, Woolfenden & Gawne,* for plaintiff.

*Zwerdling, Zwerdling, Keith & Livingston (A. L. Zwerdling,* of counsel), for defendants.

BOYLES, J. The individual defendants, 129 in number, hereinafter referred to as claimants, were employees of the plaintiff corporation during 1953. They made claim for the unemployment compensation benefits claimed to be due them under the formerly-called Michigan unemployment compensation act,

now called the Michigan employment security act
(PA 1936 [Ex Sess], No 1, as amended [CL 1948 and
CLS 1952, § 421.1 *et seq.* (Stat Ann 1950 Rev and
Stat Ann 1953 Cum Supp § 17.501 *et seq.*)]).

The original determination and redetermination
of the employment security commission denied said
benefits to claimants. An appeal was taken; the
hearing referee reversed the prior determination and
awarded benefits. Thereupon an appeal was taken to
the appeal board, which affirmed the referee. Plain-
tiff-appellee, hereinafter referred to as employer,
thereupon appealed to the Ingham county circuit
court. That court reversed the hearing referee and
appeal board, and determined that claimants were
disqualified from receiving benefits. Claimants have
appealed to this Court. The pertinent facts are as
follows:

The labor union which represented claimants, in
September, 1952, requested that the contract be-
tween it (as bargaining agent for claimants) and em-
ployer be reopened with the object of obtaining a
general wage increase. Employer refused, but in
June, 1953, reconsidered and indicated a willingness
to reopen the contract. During June and July, 1953,
there were many meetings between the union and
employer. At a meeting held on June 26th, and at
subsequent meetings, employer charged that there
had been an organized slowdown in its plant. The
union denied all charges of any slowdown, and at a
subsequent meeting charged employer with a speed-
up. At the aforementioned meeting, in addition to
the discussion of wages, other benefits, and the
charges of slowdown and speed-up, the parties also
discussed other grievances.

At a meeting held on July 14th employer notified
the union that it was dissatisfied with the production
in its plant. On July 16th the employer posted a no-
tice to its employees that the plant would be closed

until further notice. The only reason given by the employer for closing the plant was loss of production. by the claimed slowdown. The notice to employees.said:

"At the end of the night shift tonight the plant will be closed until further notice.

"The company has been compelled to take this action because of the general slowdown in production which has been taking place making it impossible to operate economically. * * *

"Since the first meeting between the company and the union on June 15, 1953, production has gone down to the point where economical operations are no longer possible. The company called this situation to the attention of the union on June 26, 1953, but production has not improved. Too many employees are simply not producing a fair day's work. Whether. or not this failure to produce is encouraged by the union is immaterial; as the union is the bargaining agent of all employees; the union must be held responsible for correcting the situation.

"The company has advised the shop committee today that when the union gives the company satisfactory assurances that employees will produce a fair day's work and that production will be at the level existing prior to the breaking off of economic discussions then we will be happy to reopen the plant. * * *

"July 16, 1953"

About 2 weeks later, on July 29th, employer and the union reached an agreement on the terms of a new contract and claimants returned to work soon thereafter. Claimants then sought unemployment compensation for the period from July 17th, the first day the plant was closed, to August 1, 1953, the day when it reopened. Employer refused, contending that claimants were disqualified for benefits under the act. Thus the issue is raised for consideration here, on this appeal. It is purely a question of fact.

At the hearing before the referee, employer introduced in evidence certain memoranda which it prepared and which purport to be digests or abstracts of the events which transpired at the meetings held by employer and union during the months of June and July, 1953. These memoranda set forth employer charges of a slowdown and the union's countercharges of a speed-up. Testimony was also taken at the hearing. Employer's witness, in order to prove there had been a slowdown, testified that average daily shipments during the week May 25, 1953, had a total value of $29,887, and that for the week of July 13, 1953, their total value was $6,-337.82. This was the only evidence offered which tended to prove the slowdown. Although one of employer's witnesses testified that the "daily job tickets" which showed daily production of each individual employee were available, they were not offered in evidence.

The statutory provision which employer asserts disqualifies claimants from benefits under the act is found in section 29,* which provides:

"(1) An individual shall be disqualified for benefits: * * *

"(b) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed."

The appeal board found that there was a labor dispute, but that claimants were entitled to receive benefits because the stoppage of work did not result from the labor dispute.

A number of States have adopted statutory provisions similar to that of the Michigan act previously quoted. Employer cites a number of cases which decide that employees are not entitled to benefits un-

---

* CLS 1952, § 421.29 (Stat Ann 1953 Cum Supp § 17.531).

der fact situations similar to that of the case at bar. These cases are, however, distinguishable from the case at bar. In all of them there was a labor dispute and a stoppage of work, but in none of them was it contended, as claimants here contend, that the stoppage of work was not due to the labor dispute. A careful reading of these cases discloses that in all instances the work stoppage was clearly due to the labor dispute. Among said cases principally relied on are: *Brown Shoe Co.* v. *Gordon,* 405 Ill 384 (91 NE2d 381); *Sandoval* v. *Industrial Commission,* 110 Colo 108 (130 P2d 930); *In re North River Logging Co.,* 15 Wash2d 204 (130 P2d 64).

In the instant case, several matters were in dispute. The union had claimed certain grievances. The parties could not agree on the wage provisions of the new contract which was under negotiation. There were also the charges of a slowdown and the countercharges of a speed-up. However, the appeal board found that the work stoppage was not due to the dispute. In that connection, it should be noted that on an appeal to the court from a decision of the appeal board, the court may reverse findings of fact only if they are contrary to the great weight of the evidence. CLS 1954, § 421.38 (Stat Ann 1955 Cum Supp § 17.540).

The record here on this appeal fails to disclose that the production of employer's plant was impaired by any of the matters in dispute at the conferences between the parties, with the possible exception of the claimed slowdown. The evidence of the slowdown consisted only of assertions that one had occurred, and of the evidence, hereinbefore noted, of the value of goods shipped from employer's plant for 2 different weeks. There was no showing as to the amount of production actually gotten out in each of those 2 weeks, as to how much went into storage, or that the entire week's production was shipped during the

week. Under the proofs which were submitted to it, the appeal board properly found that employer had failed to establish a slowdown, and we cannot say that this finding was contrary to the great weight of the evidence. Employer's notice to its employees that its plant was being closed gave as the only reason for this action, with the resulting stoppage of work, that plant production was not maintained at its proper level and that claimants had failed to give a fair day's work. Obviously, this self-serving claim was open to employer to prove, at the hearing before the appeal board. Other matters in dispute between the parties were not proven and do not control, as even the employer did not claim that they resulted in any work stoppage. For a decision in many respects similar to the case at bar, see *Copper Range Company* v. *Unemployment Compensation Commission,* 320 Mich 460.

Employer asserts that the burden of establishing eligibility for benefits under the act is upon claimants. This broad principle is a correct general statement of the law. *Cassar* v. *Employment Security Commission,* 343 Mich 380. It is, however, subject to certain exceptions. The facts which would prove a slowdown were peculiarly within the knowledge and control of employer, and under such circumstances the burden was upon it to produce competent and convincing evidence that there had in fact been a slowdown. Cases so holding are collected at 20 Am Jur, Evidence, § 140. Had a slowdown of substantial proportions been proved, it would be clear that claimants, under the facts of this case, would not be entitled to benefits.

The findings of fact of the appeal board as to the "slowdown" asserted by the employer were not contrary to the great weight of the evidence. See section 38 of said act (CLS 1954, § 421.38 [Stat Ann 1955 Cum Supp § 17.540]). We are in agreement

with claimants and the appeal board that the slow-down was not proved, and that it was the employer's burden to do so.

"The general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits, requires that respondent [here the appellee] undertake this proof." *Federal Trade Commission* v. *Morton Salt Co.*, 334 US 37, 44, 45 (68 S Ct 822, 92 L ed 1196, 1 ALR2d 260).

Reversed and remanded for reinstatement of the order of the appeal board. Costs to appellants.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.