SCOTT *v.* BUDD COMPANY.

1. Unemployment Compensation—Findings of Fact by Appeal Board—Evidence—Courts.

    Findings of fact by the appeal board of the employment security commission, that the unemployment of claimants, employees in machining section of brake drum manufacturing operation of employer, was due to shutdown or start-up operations caused by a labor dispute in employer's foundry section of the same operation, are conclusive upon court reviewing the matter where supported by the great weight of evidence (CL 1948, § 421.29, as amended by PA 1963, No 226; § 421.38, as amended by PA 1951, No 251).

2. Same—Labor Dispute—Active Progress—Cause of Shutdown or Start-up Operations.

    Disqualification of an individual for unemployment compensation benefits follows unemployment due to "labor dispute in active progress, *or* to shutdown or start-up operations caused by such labor dispute in which he is or was last employed" and in case of unemployment due to the latter alternative, it is of no import that the labor dispute is no longer in progress provided it is shown that the labor dispute was the cause of the shutdown or start-up operation (CL 1948, § 421.29, as amended by PA 1963, No 226).

References for Points in Headnotes

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 36, 49.
[2, 5, 6] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.
    Construction and application of provisions of unemployment compensation or social security acts regarding disqualification for benefits because of labor disputes or strikes. 28 ALR2d 287.
[3] 50 Am Jur, Statutes §§ 217, 219, 321.
[4] 50 Am Jur, Statutes §§ 217, 219, 235, 247, 291.
[7] 20 Am Jur 2d, Costs § 16.

3. COURTS—PRECEDENTS—CONSTRUCTION OF STATUTES.

Decisions construing prior language of a statute are inapplicable to action wherein new language is being construed, except insofar as they may afford guidance.

4. STATUTES—CONSTRUCTION.

Courts do not impart a nugatory meaning to words in a statute if the words are susceptible to being made effective.

5. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION FOR BENEFITS—LABOR DISPUTE—SHUTDOWN AND START-UP OPERATIONS—SECTIONS OF SINGLE UNIT OPERATION.

Employees of machining section of brake drum manufacturing operation of employer *held,* disqualified for unemployment compensation benefits for period of layoff during shutdown and start-up operations in their section due to labor dispute in foundry section of the same operation, where it appears both sections functioned as one unit in the same establishment and the working conditions of all employees in both sections would be affected by the outcome of the dispute, 2 of the tests of direct interest having been met (CLS 1961, § 421.29, as amended by PA 1963, No 226).

6. SAME—LABOR DISPUTE—SENIORITY—BUMPED EMPLOYEE.

Claim for unemployment benefits by employee, who had been bumped by someone exercising greater seniority rights, is remanded to appeal board of the employment security commission, where no causal connection was established between the claimant and labor dispute in active progress or between shutdown or start-up operations caused by such labor dispute (CL 1948, § 421.29, as amended by PA 1963, No 226).

7. COSTS—BOTH PARTIES PREVAILING IN PART.

No costs, both parties having prevailed in part upon appeal from decision of appeal board of employment security commission that claimants were disqualified for unemployment compensation because of labor dispute (CL 1948, § 421.29, as amended by PA 1963, No 226).

Appeal from Wayne; Rashid (Joseph G.), J. Submitted November 10, 1967. (Calendar No. 32, Docket No. 51,720.) Decided January 10, 1968.

Clarence Scott and 44 others presented claims for unemployment compensation. Protest by the

employer, The Budd Company, was disallowed. A redetermination was issued by the commission in which it was ruled that no legal basis existed to impose a disqualification. Hearing referee affirmed the redetermination. Appeal board reversed the referee and held claimants were disqualified for benefits. Circuit court affirmed. Supreme Court granted leave to appeal and to bypass Court of Appeals. Affirmed as to claims of 44 claimants. Claim of Knapp remanded to appeal board of employment security commission.

*Stephen I. Schlossberg, John A. Fillion, Bernard F. Ashe, Jordan Rossen,* and *Michael Friedman,* for plaintiffs.

*Beaumont, Smith & Harris, Frank E. Cooper,* and *Edward H. Cooper,* for defendant Budd Company.

ADAMS, J. The main question in this case is the construction of the following language in effect at the time of these proceedings which was contained in section 29(1)(b) of the Michigan employment security act as amended by PA 1963, No 226 (CLS 1961, § 421.29, as amended [Stat Ann 1963 Cum Supp § 17.531]):

"An individual shall be disqualified for benefits: "For any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed. * * * No individual shall be disqualified * * * if he is not directly involved in such dispute."

*The Facts.*

On Wednesday, October 30, 1963, a number of employees in the foundry section of the brake drum manufacturing operation of the Budd Company, in its Detroit plant on Charlevoix avenue, walked off the job in protest of disciplinary action taken by management against two employees. As a result, production of castings was substantially curtailed. Through negotiations to settle the matter, start-up operations began in the foundry section on the second shift of Friday, November 1, 1963. All foundry employees reported for work on the following Monday. No work had been scheduled for Saturday or Sunday.

The foundry section was equipped to produce approximately 24 separate types of passenger car brake drum castings but only 10 to 12 types in a given day. Foundry capacity was running in the range of 25,000 to 30,000 castings per day. October and November were months of peak requirements. The delivery demand for brake drums averaged from 30,000 to 32,000 daily, except Saturday and Sunday. Budd Company, in the summer of 1963, had built up a bank of brake drum castings as a source of extra supply. During October and November, 1963, the castings on hand of all types approximated 80,000 to 90,000.

In the 1963 manufacturing process, brake drums cast in the foundry were carried by conveyor line to a cleaning room and next transported by conveyor line to the hub and drum machining section located in the same building. Here 19 or 20 machining lines employed approximately 500 persons. These lines lacked tooling versatility to machine the castings interchangeably on different lines. Each line was set up to machine a specific casting. Employment on a particular machining line was

dependent on the availability of the type of casting scheduled for processing by that line.

Under normal conditions, the machining capacity of the hub and drum division was 25,000 to 30,000 pieces a day. When the walkout occurred, management began to withdraw castings from the bank to maintain operations in the machining section. By Monday morning, November 4, 1963, the bank of castings had been reduced to such an extent that full operations in the machining section were not possible.

Although employees were back at work in the foundry on Monday, November 4, it was not feasible to produce all types of castings the same day. Only 10 to 12 types could be produced due to limitations of time in setting up equipment. The company adopted a cycling pattern in the foundry so as to manufacture as many drums as possible and to rebuild the castings bank.

Because castings for some lines were not available from the foundry or from the bank, the company began laying off employees on those lines. Around 64 employees were laid off on November 4 and an additional 21 on November 5. The majority were recalled on November 11 and 12 and all were back at work by the 18th.

These 45 claimants are within the group employed in the machining section and laid off on November 4 or 5, except for claimant Dwight Knapp who was employed in the quality control section of the wheel division. His job was to inspect wheels, rims and discs—"in other words, the components that make up a wheel". He had nothing to do with inspecting drums for passenger cars. Knapp testified he was laid off on November 5 because of being "bumped" from his position by someone exercising greater seniority rights. Knapp's explanation was:

"Some other man replaced me on my job. My job continued to run, but I was replaced by a senior employee."

Knapp was called back to work on November 13.

A benefit check for the week ending November 9, 1963, paid to Clarence Scott, was protested before the Michigan employment security commission by the Budd Company. The protest was disallowed, the claims interviewer making a determination of no disqualification. On February 25, 1964, a redetermination was issued by the commission in which it was ruled that no legal basis existed to impose a disqualification. The hearing referee affirmed the redetermination issued by the commission. By decision dated July 12, 1965, the appeal board reversed the referee and held that the 45 claimants were disqualified for benefits within the meaning of section 29 of the act. On appeal to the circuit court, the circuit judge upheld the findings and determination of the appeal board. This Court granted leave to appeal and to bypass the Court of Appeals.

## The Law.

The above narrative of the facts, while disputed in some particulars by plaintiffs-appellants, is supported by the great weight of the evidence.[1] Much of appellants' brief is occupied with evidentiary matters which cannot be the concern of this Court. The appeal board's findings of fact (except for the case of Dwight Knapp which will be dealt with

[1] The test now provided in the statute is "competent, material and substantial evidence on the whole record." PA 1967, No 254, § 38, effective July 19, 1967, amending CL 1948, § 421.38, as amended by PA 1951, No 251 (Stat Ann 1960 Rev § 17.540). [The quoted test is the same as provided in Const 1963, art 6, § 28.—Reporter.]

hereafter), affirmed by the circuit court, that the unemployment of appellants was due to shutdown or start-up operations caused by a labor dispute are conclusive.

The basic question of law presented involves an interpretation of section 29(1)(b), partially quoted above, disqualifying for unemployment benefits any claimant whose employment "is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute."

It is the claim of appellants that individuals who become unemployed because of shutdown or start-up operations caused by a labor dispute in the establishment in which they are employed would not be disqualified unless the labor dispute remains in active progress during the time that the shutdown or start-up operations occur.

From 1941 until enactment of the 1963 act, the language of the statute read:

"An individual shall be disqualified for benefits: * * * For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed."[2]

A comparison of the above language with the 1963 amendment reveals that the words "a stoppage of work existing because of" have been deleted and the additional language "in active progress, or to shutdown or start-up operations caused by such labor dispute" has been added. It is also to be noted that the disjunctive has been used. Consequently, while under the previous language only one ground for disqualification was stated—"un-

---

[2] PA 1941, No 364, § 29(c); PA 1942 (2d Ex Sess), No 18, § 29(c); PA 1943, No 246, § 29(c); PA 1947, No 360, § 29(1)(b); PA 1951, No 251, § 29(1)(b); PA 1954, No 197, § 29(1)(b); PA 1955, No 281, § 29(1)(b).

employment    *    *    *    due to a stoppage of work
existing because of a labor dispute"—now two are
set forth—"unemployment    *    *    *    due to a labor
dispute in active progress" or unemployment due
"to shutdown or start-up operations caused by such
labor dispute".    Where formerly the disqualifica-
tion spoke only in terms of being due to a stoppage
of work, now three time intervals are stated:    (1)
the time while a labor dispute is in active progress,
(2) the time during which shutdown operations
take place, and (3) the time during which start-up
operations occur.    These time periods may overlap
in a given situation or each might be a separate
segment of time.    Each is a ground for disqualifi-
cation if the requisite causal connection is estab-
lished with a claimant's unemployment.

In the present case the fact that the labor dispute
was no longer in progress when the start-up–shut-
down operation of Budd Company occurred is of
no import provided it is shown that the cause of
the start-up–shutdown operation was the labor dis-
pute.    As already noted, except for Dwight Knapp,
from the facts which have been set forth, such
causal relationship was established here.

Since our concern is with the proper construction
of new language in the statute, decisions of this
Court construing prior language are not applicable
except insofar as they may afford guidance.    It
may be noted, however, that the decisions constru-
ing the less restrictive language of the prior statute
are in accord with our construction of the language
here involved.    See *Buzza* v. *Unemployment Com-
pensation Commission* (1951), 330 Mich 223; *Bed-
well* v. *Employment Security Commission* (1962),
367 Mich 415.

Finally, to adopt the construction argued for by
appellants, that the shutdown and start-up clauses

are operative only while the labor dispute is in active progress, would be to render those provisions without meaning in the statute, because employees whose unemployment is due to a labor dispute then in active progress are disqualified by virtue of that fact. The Court does not impart a nugatory meaning to words in a statute if the words are susceptible to being made effective.

As was held in *Park* v. *Employment Security Commission* (1959), 355 Mich 103, 131, and *Northwest Airlines, Inc.,* v. *Employment Security Commission* (1966), 378 Mich 119, 135, the basic disqualification finding must first be made, followed by a determination of direct interest. Upon the record before us, the foundry section and the machining section of the brake drum manufacturing operation in the Budd plant are one unit in the same establishment. There is also testimony that the working conditions of all employees in the foundry and drum machining operations would be affected by the outcome of the dispute. Two of the tests of direct interest were met. One is sufficient under the statute.

There remains for consideration the separate and distinct situation of claimant Knapp who, it will be recalled, was employed in the quality control section of the wheel division and whose job had nothing to do with inspecting drums for passenger cars. His unquestioned testimony is that he was bumped by someone exercising greater seniority rights, but there is nothing to link the bumping with an employee who exercised such right to bump due to the shutdown operations in the brake drum section. No causal connection between a labor dispute in active progress or between shutdown or start-up operations caused by such labor dispute, as to claimant Knapp, was established. There is a

total absence of proof of any such causal connection. For this reason, the claim of Knapp is remanded to the appeal board of the employment security commission for processing in accordance with this opinion. The decision of the circuit judge upholding the findings and determination of the appeal board is affirmed as to the claims of the remaining 44 claimants.

No costs, both parties having prevailed in part upon this appeal.

DETHMERS, C. J., and KELLY, T. M. KAVANAGH, SOURIS, O'HARA, and BRENNAN, JJ., concurred with ADAMS, J.

BLACK, J., concurred in the result.