### BRUFF *v.* GENERAL MOTORS CORPORATION

1. UNEMPLOYMENT COMPENSATION—ADMINISTRATIVE LAW—APPEAL AND ERROR—FINDING OF FACT.

     A finding of fact by the Employment Security Commission Appeal Board that local issues did exist in separate establishments, initially closed by a national strike, may not be disturbed where it is supported by the record.

2. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION—LABOR RELATIONS.

     A labor dispute disqualification for employment security benefits does not necessarily end with the settling of the issues in the

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 49.
[2–4] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 36.

dispute; the disqualification may continue for a reasonable period after the settlement if, because of the nature of the employer's operations or because of necessary and reasonable plant make-ready operations, it is not possible to resume production immediately.

3. UNEMPLOYMENT COMPENSATION—DISQUALIFICATION—LABOR RELATIONS.

The Michigan Employment Security Commission Appeal Board's failure to disqualify claimants from employment security benefits during the reasonable plant make-ready time was error where the Commission had disqualified other similarly situated workers during the make-ready time in their plants and where evidence showing the necessity for plant make-ready time was undisputed on the record.

4. UNEMPLOYMENT COMPENSATION—LABOR RELATIONS.

Claims for employment security benefits for the period between the curtailment of operations and the resumption of full scale production at 11 General Motors plants in Michigan should be paid for all weeks claimed with the exception of weeks when a plant was actually on strike where General Motors and the union were engaged in collective bargaining negotiations that were predominently local in nature, 6 of the 11 plants of the corporation were struck, and the remaining 5 plants were compelled to curtail operations because of the effects of the strikes at the other plants (CL 1948, § 421.29), as amended by PA 1955, No 281.

Appeal from Ingham, Jack W. Warren, J. Submitted Division 2 March 6, 1970, at Lansing. (Docket No. 7,380.) Decided June 24, 1970.

Horace Bruff and 5,815 other General Motors Corporation employees presented their claims for unemployment compensation benefits. Benefits granted. Defendant appealed to Unemployment Compensation Appeal Board. Affirmed. Defendant appealed to Ingham Circuit Court. Affirmed. Defendant appeals. Affirmed in part, modified in part.

*Zwerdling, Miller, Klimist & Maurer,* for plaintiffs.

*K. Douglas Mann* (*Ross L. Malone,* of counsel), for defendant.

Before: GILLIS, P. J., and DANHOF and O'HARA,[*] JJ.

O'HARA, J. In the narrow—and sometimes dimly lighted—corridor of permissible judicial review[1] of findings of fact of the Appeal Board of the Michigan Employment Security Commission, two familiar adversaries worthy of each other's rhetoric meet again.

General Motors Corporation is the appellant. Nominally, Horace Bruff and 5,815 other GM employees are the appellees. The UAW-CIO, by its attorneys, have appeared in their behalf throughout the proceedings.

The question presented is the entitlement of the claimants to employment security benefits. Appel-

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The relevant statutory provision which was in effect at the time the claims were allowed was § 38 of PA 1936 (Ex Sess), No 1, as amended (CL 1948 § 421.38 [Stat Ann 1960 Rev § 17.540]), which read in part:

"The findings of fact made by the appeal board acting within its powers if supported by the great weight of the evidence, shall, in the absence of fraud, be conclusive, but the circuit court of the county, in which the claimant resides or in which the employer's principal place of business in Michigan is located, if no claimant is a party to the case, or the circuit court for the county of Ingham shall have power to review questions of fact and law on the record made before the referee and the appeal board involved in any such final decision, but said court may reverse such decision of said appeal board upon a question of fact only if it finds that said decision of the appeal board is contrary to the great weight of the evidence * * * ."

lant GM[2] contends they are not.  The Union[2] urges
that they are.

The controlling section of the statute in effect at
the time the claims were allowed was § 29 of PA
1936 (Ex Sess), No 1, as amended by PA 1955, No 281
(CLS 1961, § 421.29 [Stat Ann 1960 Rev § 17.531]),
which read in pertinent part:

"(1) An individual shall be disqualified for bene-
fits:

\* \* \*

"(b)  For any week with respect to which his total
or partial unemployment is due to a stoppage of
work existing because of a labor dispute *in the es-
tablishment* in which he is or was last employed:
Provided, however, That no individual shall be dis-
qualified under this section if he shall establish that
he is not directly involved in such dispute.  For the
purpose of this section, no individual shall be deemed
to be directly involved in a labor dispute unless it
is established:

(1)  That, at the time or in the course of a labor
dispute in the establishment in which he was then
employed, he shall in concert with 1 or more other
employees have voluntarily stopped working other
than at the direction of his employing unit, or

(2)  That he is participating in or financing or
directly interested in the labor dispute which caused
the stoppage of work: Provided, however, That the
payment of regular union dues shall not be construed
as financing a labor dispute within the meaning of
this sub-section  \* \* \*  ."  (Emphasis added.)

It is essential to point out that the question as here
framed cannot arise again because the above-quoted
statutory provision was amended by PA 1963, No
226 and again by PA 1965, No 281, effective July
22, 1965.  The amendment materially affects the
basis for future disqualifications.

---

[2] We shall so refer to the parties throughout the decision.

The cases involve 5,816 claims for unemployment compensation benefits. The unemployment occurred in 11 General Motors plants in Michigan. The periods for which benefits are claimed vary from case to case, but all claims together cover the benefit weeks ending September 16, 1961 through October 7, 1961.

During this period, GM and the union were engaged in collective bargaining negotiations which the referee found to have been predominantly local in nature. Six of the 11 plants of the corporation were struck and picketed following the failure of the parties to reach agreement over these local issues —the strike deadline of September 11, 1961, had been set by the union's president, Walter Reuther. Pickets were removed and offers to return to work were made by the local unions at various times prior to September 24, 1961. The claims of each of these plants cover the period between the making of such offers and the resumption of full scale production and recall of the employees.

The remaining five plants were not struck, but were compelled to curtail operations due to the effects of the strikes at the other plants. The claims at each of these plants cover the period between the curtailment of operations and the resumption of full scale production and the recall of the employees.

Based upon findings of fact which are unchallenged by GM, the Appeal Board concluded that benefits should be paid for all weeks claimed with the exception of weeks when a plant was actually on strike, save only as to the Cadillac plant which will be discussed separately later. The decision of the Appeal Board was affirmed by the Circuit Court of Ingham County as not being contrary to the great weight of the evidence.

It is almost as important in this case to understand what the employer does *not* claim as what he does. First, GM asserts that it does not seek reversal or modification of any finding of fact on the ground that the finding was contrary to the great weight of evidence. Rather, GM argues that impermissible inferences and conclusions were made from the facts as found, and that the controlling law was erroneously applied to those facts, inferences and conclusions by the majority of the Appeal Board.

Second, GM iterates and reiterates that it has at no time contended that the plant in which each claimant was employed was anything other than a separate "establishment" as that term is used in the act. In consequence of this position GM contends that *Park* v. *Employment Security Commission* (1959), 355 Mich 103, is totally inapplicable.

Appellant takes particular exception to the language of the learned circuit judge that its legal argument is "a rephrasing of the 'functional integration'" argument rejected by the Supreme Court in *Park, supra.*

We fully appreciate GM's vigorously urged contention that *Park* is inapplicable. What we consider GM's position to be is that it transcends permissible inference or logical conclusion to hold that a national automotive strike with GM as the "target", called at national level, "causing hundreds of thousands of General Motors employees to collectively withhold their labor power", by action that could only be authorized by the Executive Board of the International Union, could by some legalistic metamorphosis become at some point in time during negotiations a local strike in separate establishments concerned only with local issues. It seems to us GM is urging a "proximate cause" test, as that term is used in negligence law. This is to say, the national strike

initially caused the total stoppage of work and that what happened at a given time in local plants are non-proximate, irrelevant causes.

In logic, there may be force in this position. From the standpoint of the controlling law, which we cannot disturb, it cannot prevail.

We are unable to accept GM's contention that what was decided in *Park* is not an issue here. Appellate issues, like friends, sometimes can be chosen, but sometimes, like relatives, they are thrust upon us. *Park* is thrust upon GM. The case cannot be swept under the rug of review. Logically or not, the Appeal Board found factually that local issues in separate establishments did exist. The record, including GM's annual report, which was an exhibit, supports this finding of fact. We may not disturb it.

We do, however, find a misapplication of law with regard to week No 38 (ending Sept. 23, 1961). After finding as a fact that certain claimants were disqualified for that week by reason of a work stoppage due to a labor dispute in the establishment in which they were last employed, the board made an additional finding. We set it out herewith:

"There is, however, another controlling element as to week No 38 (week ending Sept. 23, 1961) and that is in respect to the corporation's efforts to resume production during said week after having been closed down by the strike. It would appear that the Corporation endeavored to make ready for production within a reasonable period following the tentative agreement and did, in fact, resume production on September 21, 1961 (at the Cadillac plant).

"We are of the opinon that *Park, supra,* is not controlling as to week No 38, but is more compatible with the principle of the case of *Buzza v. Unemployment Compensation Commission* (1951), 330 Mich 223.

\* \* \*

"It has been held that a labor dispute disqualification * * * does not necessarily end with the settling of the issues in dispute but such disqualification may continue for a reasonable period thereafter if, because of the nature of the employer's operations or because of necessary and reasonable make-ready operations, it is not possible to resume production immediately (citing *Peaden* v. *Employment Security Commission* (1959), 355 Mich 613).

* * *

"The employer utilized the period from September 18, 1961 to September 21, 1961 for make-ready operations * * * [i]t is deemed that the stoppage of work existed because of the labor dispute, and they are disqualified for benefits * * * for said week."

As noted by GM in its brief:

"Paradoxically the Board majority failed to disqualify claimants from the Chevrolet Livonia Spring and Bumper, Fisher Fleetwood and Fisher Livonia plants for an additional week to allow reasonable plant make-ready time at those plants even though evidence of need for such time was undisputed on the record."

We agree. We can find absolutely no factual difference between the situation at the Cadillac plant and the others specified in GM's brief. Hence, we hold that as a matter of law, the appeal board misapplied its cited cases as to the Chevrolet Livonia Spring and Bumper, Fisher Fleetwood and Fisher Livonia plants.

The order of the circuit court affirming the appeal board is modified to impose the same disqualification upon claimants from the above-specified plants as was imposed upon claimants from the Cadillac plant. In all other respects the order of the circuit court is affirmed. No costs, neither party having prevailed in full.