SALENIUS *v.* EMPLOYMENT SECURITY COMMISSION

1. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—
PURPOSE—STATUTES—CONSTRUCTION.

   The Employment Security Act was enacted to deal with the
   problems of involuntary unemployment; the act, being remedial,
   must be construed liberally to achieve its purpose (MCLA
   § 421.1).

2. STATUTES—STATUTORY EXEMPTION—BURDEN OF PROOF.

   The burden of proving justification or exemption under a special
   exemption to the prohibitions of a statute generally rests on
   the one who claims the benefits of the exemption.

3. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—
EMPLOYER'S EXEMPTION—LABOR DISPUTE.

   An employer who seeks exemption from payment of unemploy-
   ment benefits under the Employment Security Act on the
   ground that the claimants' unemployment was caused by a
   labor dispute in active progress bears the burden of proving
   that he is entitled to that exemption (MCLA § 421.29[8]).

4. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — STATUTES
— CONSTRUCTION.

   The Employment Security Act's provisions disqualifying claim-
   ants from benefits if their employment was due to a labor

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance and Re-
tirement Fund § 7.

[2] 50 Am Jur, Statutes § 430 *et seq.*

[3–7] 48 Am Jur, Social Security, Unemployment Insurance and Re-
tirement Fund § 36.

Construction and application of provision of social security or
unemployment compensation act regarding disqualification for
benefits because of labor disputes or strikes.  148 ALR 1309,
173 ALR 490 supp. 28 ALR2d 287.

dispute in active progress in the establishment in which they were employed are narrowly construed (MCLA § 421.29).

5. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—LABOR DISPUTE—DEFINITION—CONTROVERSY.

A labor dispute for purposes of the provisions of the Employment Security Act disqualifying claimants from benefits for unemployment due to a labor dispute in active progress means no more than a controversy between the employer and his employees regarding hours, wages, and conditions of employment or recognition of a bargaining representative; a controversy is more than a difference of opinion; it is a difference marked by the expression of opposing views (MCLA § 421.29 [8]).

6. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—LABOR DISPUTE—LOCKOUT.

A lockout is not entitled to automatic designation as a labor dispute, because if it were, an employer, by designating a layoff as a "lockout", could avoid the unemployment consequences of a layoff and frustrate the purpose of the Employment Security Act.

7. UNEMPLOYMENT COMPENSATION—EMPLOYMENT SECURITY ACT—DISQUALIFICATION—LABOR DISPUTE.

Unemployment compensation claimants were not engaged in a labor dispute in active progress in their employer's establishment and were entitled to benefits where the claimant's union had notified the employer, an out-of-state contracting company and not a member of the Michigan chapter of the general contractors association, that the union contract with the Michigan chapter of general contractors would be terminated, the employer and union agreed that they would be bound by the results of the union agreement with the Michigan general contractor, the employer did not engage in any of the negotiations between the union and the Michigan contractors and the Michigan contractors association did not act as the employer's bargaining agent, all of the employer's employees continued working, even after picket lines were put up against other contractors, the employees and their union did not engage in any negotiations with the employer, and, after the strike against the Michigan contractors had been in progress for some time, the employer locked out his employees, because there was no labor dispute, no expression of opposing views, between the employer and his employees (MCLA § 421.29[8]).

Appeal from Marquette, Bernard H. Davidson, J. Submitted Division 3 October 7, 1970, at Grand Rapids. (Docket No. 8676.) Decided April 27, 1971.

Robert A. Salenius and others presented their claims against Jim Cullen, Inc., for unemployment benefits. Benefits denied by Employment Security Commission and Employment Security Commission Appeal Board. Plaintiffs appealed to circuit court. Denial of benefits affirmed. Plaintiffs appeal. Reversed.

*Waldo A. McCrea,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for defendant commission.

*George E. Dombrowski,* for defendant employer.

Before: HOLBROOK, P. J., and R. B. BURNS and J. J. KELLEY, JR.,* JJ.

PER CURIAM. Jim Cullen, Inc., the employer, hereinafter sometimes referred to as Cullen, is a Wisconsin corporation with its principal offices at Janesville, Wisconsin. It is not a member of the Michigan Chapter of the Associated General Contractors of America, hereinafter referred to as MAGC, which is the bargaining agent for its member contractor-employers with various unions. Cullen had only one job in the Marquette area, which was that of a prime contractor in connection with the construction of the Learning Resources Center at Northern Michigan University. It had contracts with the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

bricklayers, carpenters, and laborers unions, in addition to other trades which are not here involved, all of which expired on April 30, 1968. These contracts adopted the terms then in existence between the unions and MAGC. While the expiration date of these contracts was April 30, 1968, they were to continue "thereafter from year to year until superseded or terminated at the end of April 30, 1968, upon not less than 60 days' notice". On February 23, 1968, the business agent of the laborers' union gave written notice to Cullen that the union chose to terminate the then existing contract which was about to expire on April 30, 1968. The written notice further stated as follows:

"We would like to know if you will go along with whatever new wage adjustments and other conditions negotiated by and between the Michigan Chapter, Associated General Contractors of America, Inc., and the Construction and General Laborers' Union, Local 1329, A.F.L.-C.I.O. Please advise."

To this communication, Cullen replied as follows:

"Please be advised that Jim Cullen, Inc. will agree to any new terms of contract negotiated between the Union and the Michigan Chapter A.G.C."

The laborers' business agent did not answer this note. Although MAGC and the laborers' union continued negotiation meetings, Cullen was not involved in these and there was no bargaining between Cullen and any of the locals employed by it on that project. There were no interconnecting agreements between the Wisconsin Association and the Michigan Association and none between Cullen and MAGC or any other contractors. No one from Cullen attended any of the negotiation meetings between MAGC and the locals, and MAGC did not act as Cullen's bargaining agent.

All employees of Cullen, including laborers, continued working on Cullen's project by agreement with Cullen, even after picket lines were put up by the employees of other contractors. There was no strike on Cullen's project and no picket lines were established on Cullen's project. There was no bargaining between Cullen and any of the unions employed by it directly on its project. There was no dispute between Cullen and the laborers other than the negotiations between members of the MAGC and the laborers' union, although after May 1, 1968, Cullen's laborers were working without a contract. None of the other employees, including bricklayers and carpenters, were involved in any strike, labor dispute, or even contract negotiations on or prior to May 20, 1968, and there was no dispute among them. None of Cullen's employees refused to work as a result of any such negotiations in progress.

No agreement was reached between the laborers' union and MAGC as to a new contract by April 30, 1968. On May 17, 1968, by telegram, Cullen notified the business manager of the laborers' union as follows:

"Please be advised that effective May 20, 1968, we are locking out labor employees on the Learning Resources Center Project Northern Michigan University, Marquette, Michigan. Pending the settlement of your strike against the Michigan Chapter Associated General Contractors of America, Inc."

Dated May 17, 1968, and effective May 20, 1968, Cullen gave all of its employees a written notice reading as follows:

"Notice. We regret to inform you that you are locked out pending the settlement of the strike of Construction and General Laborers' Union Local

1329 against the Michigan Chapter Associated General Contractors of America, Inc."

Mr. Irvin Hartman, an officer of Cullen, testified as to the reason for defendant having locked out plaintiffs:

"I think we made this decision to protect our own interests and in an effort to help get an agreement in our hopes it would not be too inflationary and to know what we were going to arrive at. I think we did it for our own interests as well as assistance to negotiating body."

The claimants, all members of the bricklayers' union with the exception of George Mattila, who was a carpenter, were laid off on May 20, 1968, because there was no work available to them due to the lockout by Cullen against the laborers.

Thereafter the laborers' union and MAGC continued to negotiate a new contract and they came to an agreement on June 22, 1968. Claimants returned to work on June 24, 1968. Cullen and the laborers' union adopted this contract which was embodied in a new contract signed between them.

Appellants applied for unemployment compensation for the period from May 20 to June 22, 1968, and their claims were denied by the commission for the reason that they were unemployed due to a labor dispute in active progress in the establishment in which they were employed and they were therefore disqualified under subsection 29(8) (a) IV of the Michigan Employment Security Act. The decision of the commission was affirmed by the Referee and his decision was affirmed by the Michigan Employment Security Appeal Board. On appeal, the circuit court also affirmed.

The issue is whether the claimants are disqualified

from receiving unemployment compensation for the period of the lockout.

Appellants maintain that there was no labor dispute in active progress in the establishment in which they were employed because: (a) the laborers employed by Cullen had not engaged in a slowdown, gone on strike, set up picket lines, or otherwise interfered with their employer's operations; (b) the laborers and Cullen had agreed to accept the results of the negotiations between the laborers' union and the MAGC; (c) the lockout was in violation of the Michigan Labor Mediation Act (MCLA § 423.9 [Stat Ann 1968 Rev § 17.454(9)]), and therefore was illegal and void; and (d) there was no dispute of any sort between Cullen and the bricklayers and carpenters employed by him.

Appellee employer claims that it was effectively involved in a labor dispute because the various unions treated it as an affiliate of the MAGC before, during, and after the negotiations. It also claims that the lockout was a labor dispute.

Appellee Michigan Employment Security Commission also claims that the lockout was a labor dispute and further claims that the claimants were directly interested in the labor dispute.

Portions of subsection 29(8) of the Michigan Employment Security Act[1] provide:

"(8) An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by such labor dispute, in the establishment in which he is or was last employed, or to a labor dispute (other than a lockout) in active progress, or to a shutdown or start-up operations

---

[1] PA 1963, No 226 as amended by PA 1965, No 281; MCLA § 421.29, Stat Ann § 17.531.

caused by such labor dispute, in any other establishment within the United States which is functionally integrated with such establishment and is operated by the same employing unit. No individual shall be disqualified under this subsection 29(8) if he is not directly involved in such dispute.

"(a) For the purposes of this subsection 29(8), no individual shall be deemed to be directly involved in a labor dispute unless it is established that:

\*     \*     \*

"II. He is participating in or financing or directly interested in the labor dispute which causes his total or partial unemployment. The payment of regular union dues (in amounts and for purposes established prior to the inception of such labor dispute) shall not be construed as financing a labor dispute within the meaning of this subparagraph, or

\*     \*     \*

"IV. His total or partial unemployment is due to a labor dispute which was or is in progress in any department or unit or group of workers in the same establishment.

"(b) The term 'directly interested' as used in this subsection 29(8) shall be construed and applied so as not to disqualify individuals unemployed as a result of a labor dispute the resolution of which may not reasonably be expected to affect their wages, hours or other conditions of employment, and to disqualify individuals whose wages, hours or other conditions of employment may reasonably be expected to be affected by the resolution of such labor dispute. A 'reasonable expectation' of an effect on an individual's wages, hours or other conditions of employment shall be deemed to exist, in the absence of substantial and preponderating evidence to the contrary:

"(I) If it is established that there is in the particular establishment or employing unit a practice

or custom or contractual obligation to extend within a reasonable period to members of the individual's grade or class of workers in the establishment in which the individual is or was last employed changes in terms and conditions of employment which are substantially similar or related to some or all of the changes in terms and conditions of employment which are made for the workers among whom there exists the labor dispute which has caused the individual's total or partial unemployment; or

"(II) if it is established that one of the issues in or purposes of such labor dispute is to obtain a change in the terms and conditions of employment for members of the individual's grade or class of workers in the establishment in which the individual is or was last employed; or

"(III) if such labor dispute exists at a time when the collective bargaining agreement (which covers the individual's grade or class of workers in the establishment in which the individual is or was last employed and the workers in another establishment of the same employing unit who are actively participating in such labor dispute) has expired, has been opened by mutual consent or may by its terms be modified, supplemented or replaced.

"(c) In determining the scope of the grade or class of workers any evidence submitted to show the following shall be relevant:

\*        \*        \*

"(III) whether such workers are (or have within the past 6 months been) covered by a common master collective bargaining agreement which sets forth all or any part of their terms and conditions of employment, or by separate agreements which are or have been bargained as a part of the same negotiations,"    \*    \*    \*

On this appeal our function is to determine whether there existed a rational basis for the conclusion reached by the appeal board. *Dynamic Man-*

*ufacturers, Inc.,* v. *Employment Security Commission* (1963), 369 Mich 556, 560.

The provisions of the Employment Security Act must be read in light of the purpose of the Legislature in enacting it. That purpose is to deal with the problems of involuntary unemployment. *I. M. Dach Underwear Co.* v. *Employment Security Commission* (1956), 347 Mich 465. Since the Employment Security Act is remedial legislation, it is to be construed liberally to achieve its purpose. *O'Brian* v. *Michigan Unemployment Compensation Commission* (1944), 309 Mich 18.

It is a general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits. Accordingly, an employer, seeking exemption from payment of unemployment benefits under the Employment Security Act on the ground that the unemployment was due to a labor dispute in active progress, bears the burden of proving it was entitled to such exception. *Michigan Tool Company* v. *Employment Security Commission* (1956), 346 Mich 673, 680; *Fresta* v. *Miller* (1967), 7 Mich App 58, 64.

The record clearly indicates that claimants were not directly involved in any labor dispute under the terms of subsections I, II or III of subsection 29 (8)(a). Claimants concede that their employer had only one establishment in Michigan. Accordingly, if a labor dispute was in progress in any department, unit or group of workers in that establishment, claimants are disqualified from receipt of benefits, *Graham* v. *Fred Sanders Company* (1968), 11 Mich App 361, if their unemployment was caused by that labor dispute, *Michigan Tool Company* v. *Employment Security Commission, supra.*

In keeping with the purpose of the Employment Security Act, the trend is to construe narrowly the disqualification provisions of § 29. *Park* v. *Employment Security Commission* (1959), 355 Mich 103; *General Motors Corporation* v. *Employment Security Commission* (1966), 378 Mich 110; *Northwest Airlines Inc.* v. *Employment Security Commission* (1966), 378 Mich 119; *Scott* v. *Budd Company* (1968), 380 Mich 29; and *Great Lakes Steel Corporation* v. *Employment Security Commission* (1968), 381 Mich 249; *Bruff* v. *General Motors Corp.* (1970), 24 Mich App 608.

There is a similar trend to limit the definition of labor dispute: *Lillard* v. *Employment Security Commission* (1961), 364 Mich 401; *General Motors Corp.* v. *Employment Security Commission* (1966), *supra,* at p 117:

> [Labor dispute] "means no more than a controversy between employer and employees regarding hours, wages, conditions of employment or recognition of a bargaining representative."

A controversy is more than a difference of opinion. It is a difference "marked by the expression of opposing views." *Webster's Third International Dictionary.*

Clearly there was the requisite controversy between MAGC and the laborers' union. However, since Cullen was in no way affiliated with the MAGC and did not participate in any capacity in the negotiations between the union and MAGC, the latters' dispute cannot be transposed to Cullen and those of its employees who were members of the laborers' union. A lockout is not entitled to automatic designation as a labor dispute, *Michigan Tool Company* v. *Employment Security Commission, supra.* If it were, by designating a layoff as a lockout an em-

ployer could avoid the unemployment consequences of a layoff and frustrate the purpose of the Employment Security Act. In *Lawrence Baking Co.* v. *Unemployment Compensation Commission* (1944), 308 Mich 198, 213, the Court admonished:

" 'All interested parties who are involved in a claim for unemployment compensation  *  *  * must be dealt with on an impartial basis. The unemployment compensation fund should never be used to finance claimants who are directly involved in a labor dispute, nor should it ever be denied to claimants who are legally entitled to receive benefits.  *  *  * None of the money accumulated in this fund should ever be disbursed for the purpose of financing a labor dispute nor should it be illegally withheld for the purpose of enabling an employer to break a strike.' "

Competent, material, and substantial evidence must establish that the employer and at least one group of his employees expressed, prior to or during the lockout, differing views on wages or other matters. After Cullen informed the union that it would accept the terms of a contract negotiated by MAGC, there were no negotiations between Cullen and its employees. Neither it nor its employees made any statements regarding wages and the like. No doubt Cullen and its employees had differing views (employers and employees usually do), but until they are expressed, there is no controversy.

*Michigan Tool Company* v. *Employment Security Commission, supra,* which dealt with a similar situation, provides guidance. There the labor union which represented claimants requested that the contract between it and the employer be reopened with the object of obtaining a general wage increase. Extensive negotiations were held. During these nego-

tiations the employer charged that the union had organized a slowdown at its plants. The union denied the charges and itself charged the employer with a speed-up. The employer then locked claimants out, giving as its only reason loss of production due to the alleged slowdown. Agreement was reached two weeks later. Claimants were held entitled to benefits. The Court found that the employer had failed to prove that the unemployment was due to a labor dispute. Had a slowdown of substantial proportions been proved, claimants would not have been entitled to benefits. In the instant case, there were no negotiations between the claimants and their employer. Also, the claimants did not engage in a slowdown or interfere in any other way with their employer's operations. The termination by the laborers' union of its contract with Cullen did not constitute a labor dispute.

In view of our conclusion that claimants' unemployment was not due to a labor dispute in active progress it is not necessary to resolve claimants' further contention that the lockout was a nullity because it violated the Michigan Labor Mediation Act. Section 9 of the Michigan Labor Mediation Act, MCLA § 423.9 (Stat Ann 1968 Rev § 17.454 [9]), requires ten days' notice by the employer before any lockout. Cullen gave only three days' notice.

Under the doctrine of Federal pre-emption, it is likely that Jim Cullen, Inc., may not be subject to the Michigan Labor Mediation Act: *International Union of U.A.W., C.I.O.* v. *O'Brien* (1949), 339 US 454 (70 S Ct 781, 94 L Ed 978), (*rev'g* 325 Mich 250); *Guss* v. *Utah Labor Relations Board* (1957), 353 US 1, (77 S Ct 598, 1 L Ed 2d 601).

Reversed. Costs to appellants.