SMITH v EMPLOYMENT SECURITY COMMISSION

Docket Nos. 78-1351, 78-2093. Submitted December 5, 1978, at Detroit.
—Decided March 20, 1979. Leave to appeal granted, 406 Mich 1006.

Plaintiffs, employees of Imerman Screw Products Company and members of UAW Local 12, were engaged in bargaining with Imerman regarding a new contract to replace an expiring contract. Negotiations broke down on the contract-expiration date. The employer than informed the union that it was not willing to work without a contract and that the employees would be locked out the next day. The employees indicated a willingness to work without a formal contract and to continue bargaining.

The lockout began on June 23, 1975, and continued until July 28, 1975, when a new contract was ratified and became effective. During the period of the lockout there was no picketing by union members and the union made overtures to have its members return to work pending ratification of a new contract. The company's general manager denied that the lockout was a layoff due to lack of work, although he stated that there had been a possibility, but nothing planned, regarding a plant shutdown around the Fourth of July holiday when such a shutdown had occurred the previous year.

Gary Smith and other locked-out employees sought unemployment compensation benefits for the time that they were locked out. The Michigan Employment Security Commission denied the applications for benefits. A referee made a finding that the unemployment had been due to a labor dispute in active progress in which the plaintiffs were directly involved. The referee's determinations were upheld by the Michigan Employment Security Appeal Board. The appeal board's rulings were later affirmed by the Macomb Circuit Court, Edward J. Gallagher, J., and by the Oakland Circuit Court, James S. Thorburn, J. The plaintiffs appeal. The appeal from the judg-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 76 Am Jur 2d, Unemployment Compensation §§ 78, 84.
[3, 4] 76 Am Jur 2d, Unemployment Compensation § 81.

ment of the Oakland Circuit Court and the appeal from the judgment of the Macomb Circuit Court were consolidated. *Held:*

The provision in the Employment Security Act which disqualifies an employee from receiving unemployment compensation benefits if the employee's unemployment is due to "a labor dispute in active progress" includes only unemployment resulting from labor disputes in which the employee himself actively engages by refusing to work. The act was not intended to enforce a lockout by an employer by denying unemployment benefits to employees who are available for work, but who are denied it by their employer.

Reversed, and remanded to the trial courts for orders awarding benefits to the plaintiffs.

1. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — LABOR DISPUTE — BURDEN OF PROOF.

A person seeking unemployment compensation benefits is disqualified from receiving benefits if the unemployment is due to a labor dispute in active progress; however, for claimants to be. disqualified from receiving unemployment compensation benefits because of a labor dispute a causal connection between the dispute and the unemployment must be established and the employer bears the burden of proving that it is entitled to the labor dispute exception.

2. UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY ACT — DISQUALIFICATION — LABOR DISPUTE — STATUTES — STATUTORY CONSTRUCTION.

The provision in the Michigan Employment Security Act which disqualifies a claimant from receiving unemployment compensation benefits if the unemployment is due to a labor dispute in active progress should be narrowly construed and the definition of "labor dispute" should be limited in light of the remedial purpose of the act (MCL 421.29[8]; MSA 17.531[8]).

3. UNEMPLOYMENT COMPENSATION — LOCKOUT — LABOR DISPUTE — EMPLOYMENT SECURITY ACT.

A lockout is not entitled to automatic designation as a labor dispute in active progress for purposes of the Employment Security Act.

4. UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY ACT — DISQUALIFICATION — DISPUTE — LOCKOUT — STATUTES.

The provision in the Employment Security Act which disqualifies an employee from receiving unemployment compensation benefits if the unemployment is due to "a labor dispute in active

progress" includes only unemployment resulting from labor disputes in which the employee himself actively engages by refusing to work; the act was not intended to enforce a lockout by an employer by denying unemployment compensation benefits to employees who are available for work, but who are denied it by their employer (MCL 421.29[8]; MSA 17.531[8]).

*Rothe, Mazey, Mazey & Hamburger, P.C.,* for plaintiffs.

*Cox & Hooth* (by *Gilbert C. Cox, Jr.,* and *Dan T. Ryan)* for defendant Imerman Screw Products Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant Michigan Employment Security Commission.

Before: BEASLEY, P.J., and BRONSON and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. This case involves the application of the "labor dispute" disqualification of the Employment Security Act, MCL 421.29(8); MSA 17.531(8), to locked-out employees. From a circuit court affirmance of an adverse determination by the Michigan Employment Security Commission (MESC), plaintiffs appeal as of right. We reverse.

In May and June of 1975, plaintiffs, employees of Imerman Screw Products Company and members of UAW Local 212, were engaged in bargaining with the employer regarding a new contract to replace the old contract, which was to expire at 12:01 a.m. on June 22, 1975. Negotiations broke down in the evening of June 22, 1975. The company then informed the union that it was not willing to work without a contract and that the employees would be locked out the next day. Testi-

mony was undisputed that the union members, unlike the employer, were willing to work without a formal contract and to continue bargaining.

The lockout began on June 23, 1975, and continued until July 28, 1975, when a new contract was ratified and became effective. During the lockout there had been no picketing by union members, and the union had made overtures to the company to have its members return to work pending ratification of a new contract. Also during this time period, some work had been carried out in the factory by supervisory and management personnel. Defendant's general manager denied that the lockout was a layoff due to lack of work; he stated that there had been a possibility, but "nothing planned", regarding a plant shutdown around the Fourth of July holiday, when such a shutdown had occurred the previous year.

Based on these facts, the MESC denied plaintiffs' applications for unemployment compensation benefits. The referee made a finding that plaintiffs' unemployment from June 23-July 28 had been due to a labor dispute in active progress in which plaintiffs were directly involved. On appeal to the Michigan Employment Security Appeal Board, the referee's determination was upheld, and this ruling was then affirmed by the circuit courts.

The dispositive issue in this appeal is whether plaintiffs' unemployment resulted from a "labor dispute in active progress". The statute, MCL 421.29(8); MSA 17.531(8), provides in pertinent part:

"An individual shall be disqualified for benefits for any week with respect to which his total or partial unemployment is due to a labor dispute in active progress, or to shutdown or start-up operations caused by that labor dispute, in the establishment in which he is

or was last employed, or to a labor dispute, other than a lockout, in active progress, or to shutdown or start-up operations caused by that labor dispute, in any other establishment within the United States which is functionally integrated with the establishment and is operated by the same employing unit."

In order for claimants to be disqualified from receiving unemployment compensation because of a labor dispute, a causal connection between the dispute and the unemployment must be established. *Scott v Budd Co,* 380 Mich 29; 155 NW2d 161 (1968). The employer bears the burden of proving that it is entitled to the labor dispute exception. *Salenius v Employment Security Comm,* 33 Mich App 228, 237; 189 NW2d 764 (1971). The trend is to construe narrowly the disqualification provisions of § 29 and to limit the definition of "labor dispute", *Salenius, supra,* p 238, in light of the act's remedial purpose to provide temporary assistance to workers who become unemployed through no fault of their own. MCL 421.2; MSA 17.502, *Park v Employment Security Comm,* 355 Mich 103, 123; 94 NW2d 407 (1959), *I M Dach Underwear Co v Employment Security Comm,* 347 Mich 465, 472; 80 NW2d 193 (1956).

A number of other jurisdictions, in construing language similar to that in the Michigan Employment Security Act, have found "labor dispute" to include a lockout. See Anno: *Unemployment compensation: application of labor dispute disqualification for benefits to locked out employees,* 62 ALR3d 437, § 10. Courts in Indiana have asked whether the negotiations have reached an "impasse" prior to the lockout, while courts in California and Utah have employed a "volitional test" which asks whether the claimants were unemployed through some voluntary conduct on their

part which precipitated the lockout. 62 ALR3d 437, §§ 10(b), 11.

In Michigan, it is clear that a lockout is not entitled to automatic designation as a labor dispute in active progress. *Salenius, supra, Michigan Tool Co v Employment Security Comm,* 346 Mich 673; 78 NW2d 571 (1956). Michigan Courts have not confronted the precise issue presented in this case: whether locked-out employees who have not refused to work, but rather have indicated their willingness to continue in peaceful negotiations and to work without a contract, are disqualified from receiving unemployment compensation benefits pursuant to MCL 421.29(8). We think the better view in this situation is that expressed in *National Gypsum Co v Administrator, Louisiana Dep't of Employment Security,* 313 So 2d 230, 233 (La, 1975):

"In view of the strong public policy of the act designed to avoid crushing hardship on unemployed workers and their families, we think the more reasonable interpretation of the disqualification to be that unemployment due to 'a labor dispute in active progress' includes only unemployment resulting from labor disputes in which the employee himself actively engages by refusing to work.

* * *

"[T]he act was not intended to enforce a lock-out by the employer by denying unemployment benefits to employees who are available for work, but who are denied it by their employer. To deny compensation under such circumstances would not only be to deny benefits to employees unemployed through no fault of their own, but would be to add a sanction not contemplated by law to conduct by the employer designed to withhold subsistence from his workers and their families in order to force them to accept the employer's terms.

"We thus do not believe that a labor dispute is in active progress, insofar as disqualification for unemployment benefits is concerned, when the employees are exercising their legal right through peaceful negotiation to bargain for what they deem to be better working conditions.

* * *

"The correct interpretation of the unemployment compensation act, in the light of its express policies and in the light of the general public policy in favor of peaceful bargaining negotiation, should not permit either party to provoke the award or denial of unemployment benefits in order to enforce the effect of a strike or of a lockout."

We agree with the above reasoning. The decision of the trial court upholding the appeal board's denial of unemployment benefits is reversed and the case remanded to the trial courts for orders awarding such benefits to plaintiffs.