*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM MARK REIDENBACH,

Plaintiff-Appellant,

v

CITY OF KALAMAZOO,

Defendant-Appellee.

FOR PUBLICATION
February 26, 2019
9:10 a.m.

No. 340863
Michigan Compensation
Appellate Commission
LC No. 14-000044

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE. J.

Plaintiff, William Mark Reidenbach, appeals by leave granted the order of the Michigan Compensation Appellate Commission (MCAC) affirming its magistrate's rulings. Plaintiff is a retired public safety officer for defendant, the City of Kalamazoo (the City). Plaintiff is receiving both worker's compensation benefits and a pension. The City pays the worker's compensation benefits, and the City contributed part of the funding for plaintiff's pension. Most of the facts in this matter were stipulated. At issue in this appeal is how the City may "coordinate" the benefits with the pension, essentially meaning how much money may the City deduct from the worker's compensation benefits due to having partially funded the pension. We affirm.

## I. FACTUAL BACKGROUND

The City established a "defined benefit" pension plan in 1942, funded exclusively by contributions from employees, contributions from the City, and investment earnings. Plaintiff began working for the City in February of 1992. Plaintiff's collective bargaining unit exercised its right to be "exempt" from participation in Social Security. The City stopped making

contributions to the pension fund in 1997, because the fund was deemed overfunded,[1] so the City was not legally required to contribute. Thereafter, the pension fund received only employee contributions and investment earnings. Over the course of his employment, plaintiff's gross contributions to the pension fund came to $69,930.28, which represents approximately 20% of his pension benefits. During the same time period, the City paid $10,733,767.00 into the fund, or approximately 28% of the fund's total contributions of $38,584,375.00. However, Magistrate Chris Slater found that the City provided approximately 53% of the total contributions to the fund over the course of the fund's entire existence since 1942.[2]

In December of 2006, plaintiff suffered a work-related heart attack. At that time, he was treated and returned to work; however, he continued to suffer heart problems. Consequently, he was eventually taken off work permanently. Plaintiff's last day of work was May 3, 2008. Pursuant to his union contract, plaintiff received one year of his full wages. Plaintiff then formally retired on April 1, 2009. Because plaintiff's retirement was a "duty disability retirement," he received service credit for 25 years of employment. The parties initially disputed whether plaintiff was entitled to worker's compensation benefits. After four months, the City paid a "lump sum" for those months and proceeded to make weekly payments. Plaintiff's pension payments are $960.41 a week before taxes, and his uncoordinated worker's compensation rate is $706.00 a week. Plaintiff is not required to pay state income tax or Federal Insurance Contributions Act (FICA)[3] taxes on his pension; however, he *is* liable for federal income tax.

The City calculated that it should deduct $691.78 a week from plaintiff's worker's compensation benefits. The City calculated that amount based on its conclusion that plaintiff had funded 18% of his pension benefits, so the City could "coordinate" 82% of the after-tax value of plaintiff's pension payments. The parties later agreed that the City made an arithmetic error and should have used 20% instead of 18%. Plaintiff contended that the City's coordination should be based on the 28% contribution to the fund it made during the term of plaintiff's employment. A trial was held before Magistrate David Merwin, who subsequently issued a lengthy opinion reciting what he aptly described as "extensive stipulations" by the parties. In relevant part, Magistrate Merwin agreed that the City should only be permitted to coordinate 28% of the after-tax value of plaintiff's pension, which Merwin calculated to be $204.21.

The parties then appealed. The MCAC noted that plaintiff argued that the City should not be permitted to coordinate *any* benefits, and the City argued that it should be permitted to coordinate *all* of the benefits. The MCAC found "absolutely no merit in the arguments that suggest that all or none of plaintiff's pension is coordinatable [sic]." It otherwise adopted much of Magistrate Merwin's findings of fact and of law. It concluded, however, that Merwin had improperly calculated the after-tax amount of plaintiff's pension because the pension was not

---

[1] Magistrate Merwin observed that the experts were at least implicitly of the opinion that the "overfunded" nature of the City's pension fund was exceptional and perhaps unique.

[2] This percentage was not a stipulation, but as will be discussed, this factual finding was proper.

[3] 26 USC § 3101 *et seq*. FICA is essentially a payroll tax to fund Social Security and Medicare.

subject to FICA or state income taxes. It also concluded that Merwin improperly calculated the amount of coordination based on the City's contributions to the pension fund only during the term of plaintiff's employment, rather than the entirety of the City's contributions. It therefore remanded for recalculation of the amount of coordination to which the City was entitled.

On remand, as noted, Magistrate Slater determined that over the course of the pension fund's existence, the City had contributed approximately 53% of the total contributions. However, Slater noted that there was no evidence in the record regarding contributions before 1974, and in the absence of any such evidence, the City's "contributions for those years must be deemed zero." Slater arrived at a similar after-tax value for plaintiff's pension, but he added back in the amount of FICA and state income tax that plaintiff did not pay. He concluded that the City was entitled to coordinate 53% of that final amount, which Slater calculated to be $447.13. On appeal, the MCAC again rejected arguments from both parties to the effect that either no coordination should be permitted or no worker's compensation benefits should be paid. The MCAC concluded that Slater had not erred by refusing to reopen the record to take additional evidence, and that Slater had properly "performed the appropriate calculations in this matter as directed by the Commission." The MCAC adopted Slater's calculation as its own and affirmed Slater's decision. We granted plaintiff leave to appeal.

## II. SUMMARY OF ISSUES PRESENTED

We note initially that *both* parties have asked us to reverse the decision of the MCAC. The City is not permitted to do so under the present procedural posture of this matter. Plaintiff and the City each independently sought leave to appeal the decision of the MCAC in separate applications. In the instant appeal, this Court granted plaintiff's application in part, as to three of the issues plaintiff requested. *Reidenbach v City of Kalamazoo*, unpublished order of the Court of Appeals, Docket No. 340863 (entered April 13, 2018). At the same time, this Court denied the City's application "for lack of merit in the grounds presented." *Reidenbach v City of Kalamazoo*, unpublished order of the Court of Appeals, Docket No. 340867 (entered April 13, 2018). Consequently, the City is only an appellee, not an appellant. "[A]n appellee that has not sought to cross appeal cannot obtain a decision more favorable than was rendered by the lower tribunal." *Ass'n of Businesses Advocating Tariff Equity v PSC*, 192 Mich App 19, 24; 480 NW2d 585 (1991).

We emphasize that the City was not without a remedy. An appellee is absolutely entitled to file a cross-appeal by virtue of being an appellee, even as an appellee in an appeal by leave granted. See MCR 7.207(A)(1); *Costa v Community Emergency Med Svcs, Inc*, 263 Mich App 572, 583-584; 689 NW2d 712 (2004). Notwithstanding this Court's denial of the City's application for leave in Docket No. 340867, the City remained entitled to file a cross-appeal in *this* docket number, which would have permitted the City to assert arguments in support of greater relief than affirmance. The City elected not to do so. We will therefore only entertain

-3-

the City's arguments to the extent they can be construed as advancing an alternative basis to affirm.[4]

Consequently, there are three issues before us. First, how should the amount of coordination to which the City is entitled be calculated. Secondly, how should the after-tax value of plaintiff's pension benefit be calculated. And finally, is the City is entitled to coordinate the pension and worker's compensation benefits for the four-month period during which it made no benefit payments. The MCAC did not decide the last issue, but plaintiff raised all of these issues properly below and pursues them on appeal, so they are preserved for our review. *Polkton Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005).

## III. SUMMARY OF APPLICABLE LAW

In 1981, the Legislature enacted MCL 418.354, "which provides for the coordination of wage-loss benefits" and was intended "to prevent duplicate wage-loss payments while maintaining suitable wage-loss benefits." *Drouillard v Stroh Brewery Co*, 449 Mich 293, 299-300; 536 NW2d 530 (1995). Its legislative history unambiguously displays a concern with the avoidance of double compensation. See *id*. at 300 n 1. Specifically, MCL 418.354 allows "coordination of workers' compensation benefits with employer-funded pension plan payments." *Romein v Gen Motors Corp*, 436 Mich 515, 521; 462 NW2d 555 (1990), aff'd sub nom, *Gen Motors Corp v Romein*, 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992). The coordination means that an employer paying worker's compensation obligations may set off "that portion of certain other benefits, such as pensions and social security payments, also received by the employee and financed by the employer." *Franks v White Pine Copper*, 422 Mich 636, 647; 375 NW2d 715 (1985), superseded in part by statute on other grounds, see *Romein*, 436 Mich at 523 n 3. Both parties accept, as they must, that the City is entitled to coordinate, i.e., deduct, some amount of money from plaintiff's worker's compensation payments on the basis of the City's contributions to the pension fund. The dispute is only how to determine that amount.

We note that both parties' arguments are convoluted and difficult to comprehend, and it has not been easy for us to discern what relief they even desire. It appears plaintiff argues that Magistrate Merwin determined the correct formula in the first instance: first, the City may coordinate 28% of the after-tax value of his pension because that represents the money provided by the City to the pension fund during the term of his employment; and secondly, the coordination must be based on the after-tax value of his pension calculated by reference to a statutory table that includes all taxes. In contrast, the City does not provide a coherent argument regarding how to engage in coordination but vigorously argues that plaintiff's methodology is absurd and inequitable. It also argues that the coordination must be based on the net portion of the pension plaintiff actually receives, which is the same as the gross payment because plaintiff pays no taxes. As noted, plaintiff additionally argues that the City should not be permitted to coordinate any benefits for a four-month period during which it made no worker's compensation benefits, followed by a lump-sum payment.

---

[4] In any event, to the extent we can comprehend the City's arguments in support of greater relief, they do not appear obviously meritorious.

-4-

## IV. STANDARD OF REVIEW

In an appeal from the Michigan Compensation Appellate Commission, we primarily review the decision of the MCAC, not any underlying decision by a magistrate. *Omian v Chrysler Group LLC*, 309 Mich App 297, 306; 869 NW2d 625 (2015). We will not disturb the MCAC's factual findings if the MCAC properly reviewed the magistrate's decision for "substantial evidence" and the MCAC's own findings are supported by "any evidence." *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709-710; 614 NW2d 607 (2000). However, we review any questions of law, including the construction of statutes, de novo. *Auto-Owners Ins Co v Amoco Prod Co*, 468 Mich 53, 57; 658 NW2d 460 (2003). "Due deference should be given to the administrative expertise of the WCAC, as well as to the administrative expertise of the magistrate." *Holden v Ford Motor Co*, 439 Mich 257, 268; 484 NW2d 227 (1992).

Notwithstanding that deference, "a decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000). We review the interpretation and construction of statutes de novo with the goal of discerning and giving effect to the intent of the Legislature. *Id*. at 402. If the words of a statute are plain and clear, it will be enforced as written; we will only engage in judicial interpretation if the statutory language is ambiguous. *Id*.

## V. COORDINATION PERCENTAGE

Plaintiff argues that because the City contributed 28% of the contributions to the pension fund during the term of plaintiff's employment, the City should only be permitted to coordinate 28% of his pension. The City contends that it should be able to coordinate at least[5] 53% of plaintiff's pension, which represents its total contributions to the pension fund over the course of the fund's existence. We conclude that the MCAC correctly determined how the City may coordinate the benefits.

MCL 418.354 provides in relevant part as follows:

(1) This section applies if either weekly or lump sum payments are made to an employee as a result of liability under section 301(7) or (8), 351, or 835 with respect to the same time period for which the employee also received or is receiving . . . pension or retirement payments under a plan or program established or maintained by the employer. Except as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under section 361(2) and (3) shall be reduced by these amounts:

\* \* \*

---

[5] The City's argument is not clear, but to the extent it seeks coordination of greater than 53%, any such argument would be impermissible in the absence of a cross-appeal, and we will not consider it.

(e) The proportional amount, based on the ratio of the employer's contributions to the total contributions to the plan or program, of the after-tax amount of the pension or retirement payments received or being received by the employee pursuant to a plan or program established or maintained by the same employer from whom benefits under section 301(7) or (8), 351, or 835 are received, if the employee did contribute directly to the pension or retirement plan or program. Subsequent increases in a pension or retirement program shall not affect the coordination of these benefits.

As discussed, the parties stipulated that plaintiff suffered a personal injury arising out of his employment. That injury resulted in his total disability, which in turn caused him wage loss and forced him to retire, thereby entitling him to the receipt of pension benefits. It is also established that both plaintiff and the City contributed to the pension fund. The MCAC properly determined that MCL 418.354(1)(e) applied and dictated how to calculate the proportion of plaintiff's pension that the City may coordinate.

The plain language of the statute states that the amount must be "based on the ratio of the employer's contributions to the total contributions to the plan or program." Importantly, the preceding clause is set off by commas as a parenthetical. As a consequence, the sentence:

The proportional amount, based on the ratio of the employer's contributions to the total contributions to the plan or program, of the after-tax amount of the pension or retirement payments received or being received by the employee . . .

is semantically identical to:

The proportional amount of the after-tax amount of the pension or retirement payments received or being received by the employee . . . , based on the ratio of the employer's contributions to the total contributions to the plan or program.

Therefore, the Legislature requires "the proportional amount of the after-tax amount of the pension" to be calculated "based on the ratio of the employer's contributions to the total contributions to the plan or program." The only way to parse that requirement is to consider all of the City's contributions to the pension fund over the course of its entire existence. Plaintiff's interpretation would either restructure the sentence contrary to its plain grammar or implicitly insert the phrase "during the employee's employment." We may not do so.

Plaintiff cites an unpublished case from this Court allegedly holding to the contrary. Unpublished cases are not binding on us pursuant to either stare decisis or the first-out rule. MCR 7.215(C)(1); MCR 7.215(J)(1); *Paris Meadows LLC v Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010). In any event, in the case plaintiff cites, the panel concluded that the facts presented were unusual and not contemplated by the Legislature, so a literal interpretation of the statute would be unjust and contrary to the statute's legislative purpose. *Bailey v ANR Freight Sys, Inc*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 1999 (Docket No. 205606), pp 3-4. The panel relied on the "absurd result" rule, which may only be invoked where it is "quite impossible" that the Legislature could have intended the result. *Johnson v Recca*, 492 Mich 169, 191-195; 821 NW2d 520 (2012).

Here, as noted, the Legislative purpose underlying the statute is the avoidance of double payments by the employer. The facts in this matter are apparently unusual in that the pension fund became overfunded during the term of plaintiff's employment, which is why the City stopped making contributions. The evidence indicated that the fund became overfunded at least in part because its investments yielded exceptionally good returns. The City's payments into the fund before plaintiff's term of employment consequently *did* affect the funding of plaintiff's entire pension. We are unpersuaded that a literal application of the language of the statute would either create an unjust result or depart from the statute's legislative purpose. We therefore decline to consider *Bailey* persuasive under the present circumstances. The MCAC correctly applied the statutory language and properly found that Merwin failed to do so.

The City argues that the MCAC erred by determining that there was no evidence in the record showing how much money the City contributed to the pension fund before 1974, and thereby deeming that amount to be zero. More precisely, the City argues that it should have been permitted to supplement the record to provide evidence regarding its earlier contributions. Leaving aside whether the City may even ask for this relief, we disagree.

The parties properly agreed that, at trial, the City bore the burden of proving its right to coordinate benefits and reduce plaintiff's workers' compensation. See *Brown v Bechwith Evans Co*, 192 Mich App 158, 167-169; 480 NW2d 311 (1991). In any event, agencies may allocate burdens of proof in a manner consistent with the legislative scheme being administered and properly impose the burden of producing evidence on a party having superior access to the relevant facts. *Mich Tool Co v Employment Security Comm*, 346 Mich 673; 78 NW2d 571 (1956). The City declined to carry its burden, and it did not seek permission to supplement the record until after the MCAC decided the parties' first appeal and remanded the case to Magistrate Slater for recalculation. The MCAC had the discretion to order a magistrate to take further evidence, MCL 418.861a(12), but the MCAC was not required to do so. The City simply failed to submit evidence when it should have done so, and we do not find that the MCAC abused its discretion under the circumstances by declining to permit a last-minute addendum.

Magistrate Slater properly relied on the evidence in the record for his decision. Based on the financial data in the record, Slater determined that the City had contributed 53% of the total contributions to the pension fund. It appears that he therefore inferred that 53% represented an accurate estimated calculation of the coordination percentage. Magistrates and the MCAC may draw reasonable inferences from established facts. *Zytkewick v Ford Motor Co*, 340 Mich 309, 315; 65 NW2d 813 (1954). The plain language of MCL 418.354(1)(e) dictates that coordination must be based on the City's total contributions to the pension fund. Therefore, we conclude that the MCAC's decision is legally correct, and to the extent it implicitly or explicitly adopted its magistrates' factual findings, the MCAC properly found those findings supported by ample record evidence.

## VI. AFTER-TAX VALUE

Having concluded that the MCAC properly determined that the City was entitled to coordinate 53% of plaintiff's pension, the correct value of that pension must also be determined. The plain language of MCL 418.354(1)(e) provides that coordination is of "the after-tax amount

of the pension . . . received by the employee." The "after-tax amount" is defined in MCL 418.354(13), which provides in relevant part:

> As used in this section, "after-tax amount" means the gross amount of any benefit under subsection . . . (1)(e) reduced by the prorated weekly amount which would have been paid, if any, under the federal insurance contributions act, 26 USC 3101 to 3128 [FICA], and state income tax and federal income tax, calculated on an annual basis using as the number of exemptions the disabled employee's dependents plus the employee, and without excess itemized deductions. In determining the "after-tax amount" the tables provided for in section 313(2) shall be used. The gross amount of any benefit under subsection . . . (1)(e) shall be presumed to be the same as the average weekly wage for purposes of the table. The applicable 80% of after-tax amount as provided in the table will be multiplied by 1.25 which will be conclusive for determining the "after-tax amount" of benefits under subsection . . . (1)(e).

Consequently, the "after-tax amount" of plaintiff's pension depends on FICA, state, and federal income tax. The MCAC, in the parties' first appeal, noted that because plaintiff's pension is not subject to FICA or state income taxes, "according to § 354(13), reduction by the § 313 tables is not necessary for those amounts."

The City argues that plaintiff paid *no* taxes, and therefore the "after-tax amount" of his pension should be exactly the same as the gross payment. Irrespective of the language of the statute, this is factually incorrect, because plaintiff *is* liable for federal income taxes. Plaintiff argues that the plain language of the statute mandates that the "after-tax amount" of his pension must deduct FICA, state, and federal taxes even though he is only liable for the latter. We disagree with this contention as well.

Pursuant to the plain language of the statute, the "after-tax value" of plaintiff's pension means, in relevant part, a "reduc[tion] by the prorated weekly amount which would have been paid, if any, under [FICA, state, and federal income tax]." The determination of that amount is made by referring to the "tables" published yearly by the Bureau of Worker's Disability Compensation pursuant to MCL 418.313. The tables "are consulted to compute the difference between the after-tax value of a . . . disabled employee's average weekly wage at the time of the injury and the after-tax value of subsequent wages." *Linton v Schafer Bakeries, Inc*, 252 Mich App 41, 43; 656 NW2d 185 (2002). The MCAC determined that the tables "include the specific amounts used to produce the general figure," but pursuant to MCL 418.354(13), if "any tax should not be applied, the tables allow for that amount to be excluded." The tables include deductions for FICA and state income taxes.

We agree with the MCAC's interpretation of MCL 418.354(13). The statute refers to taxes that "would have been paid, if any." Plaintiff would not, however, have paid FICA or state income taxes, because by law he is exempt from doing so. The clause "if any" anticipates the possibility that any of the subsequently enumerated tax liabilities might not be present. Additionally, to the extent there may be any ambiguity in the meaning of MCL 418.354(13), we defer to the MCAC's superior expertise regarding a statute it is charged with administering, see *In re Complaint of Rovas*, 482 Mich 90, 98-111; 754 NW2d 259 (2008), and we independently

conclude that the MCAC's interpretation is the most consistent with the Legislature's goal of avoiding double recoveries. We conclude that the "after-tax value" mandated by MCL 418.354(13) pertains to taxes for which the employee is actually legally liable, and the clause "would have paid" commands ignorance of whether the employee actually paid those taxes.

Therefore, the MCAC properly found that Magistrate Slater engaged in the correct calculations. Slater reviewed the applicable tables, which determined that 80% of the after-tax value of plaintiff's $960.41 gross pension payments was $587.44. Because the tables calculate an 80% value, Slater then multiplied that amount by 1.25, pursuant to MCL 418.354(13), to arrive at an after-tax value of $734.32. Slater then correctly recognized that the tables included reductions for FICA and state income taxes for which plaintiff was not liable. Slater then properly added back $73.44 in FICA taxes and $35.90 in state income taxes, based on evidence in the record. He therefore correctly concluded that the true after-tax value of plaintiff's pension for purposes of MCL 418.354(1)(e) was $843.64. As discussed previously, Slater then correctly multiplied this amount by 53% and determined that the City was entitled to coordinate $447.13 of plaintiff's worker's compensation benefits.

## VII. COORDINATION OF MAY TO SEPTEMBER, 2009

As noted above, there was a four-month period, early in this matter, during which the City did not make any worker's compensation benefit payments to plaintiff. Following that period, the City paid a "lump sum" for those months, and then proceeded to make weekly payments. Plaintiff finally argues that the City should not have been permitted to coordinate its payment representing those months, on the theory that coordination requires the employee to actually receive benefit payments. We disagree with plaintiff's conclusion.

MCL 418.354(8) provides in relevant part:

Except as provided in [inapplicable subsections], a credit or reduction of benefits otherwise payable for any week shall not be taken under this section until there has been a determination of the benefit amount otherwise payable to the employee . . . and the employee has begun receiving the benefit payments.

Thus, an employer may not reduce an employee's wage loss benefits under MCL 418.354 until a determination of the benefit amount payable has been made and the employee has begun receiving wage loss benefits. Although MCL 418.354(8) does not expressly address retroactive coordination of benefits, it implicitly provides for coordination at the time the employee receives benefit payments, whenever they commence. Notably, MCL 418.354(1) explicitly applies to lump sums as well as weekly payments. MCL 418.354(8) does not indicate a legislative intent to penalize an employer who disputes an employee's claim for wage loss benefits. As discussed, MCL 418.354 is intended to prevent employers from being required to pay in excess of an employee's actual wage loss. See *Franks*, 422 Mich at 655-658.

Here, the parties did initially dispute plaintiff's entitlement to worker's compensation benefits, which Magistrate Merwin found to have been in good faith. The City commenced payment of those benefits in September of 2009. The parties stipulated that plaintiff's entitlement to those benefits began when his salary terminated on April 1, 2009. The City paid

plaintiff a lump sum for the intervening period, and then proceeded to make weekly payments, albeit based on its incorrect coordination formula. Plaintiff apparently contends that the "lump sum" should be augmented to reflect approximately four months of his uncoordinated worker's compensation benefits of $706.00 a week. However, we conclude that doing so would effectuate a penalty, and contravene the statute's plainly stated applicability to lump sums. We conclude that it was proper for the City to coordinate the lump sum payment. The MCAC properly adopted Magistrate Merwin's directive to the City to coordinate that amount pursuant to the 53% figure as determined by Magistrate Slater.

## VIII. CONCLUSION

We conclude that the MCAC's final decision and order is legally correct and properly factually supported. We therefore affirm. As discussed previously, because the City did not file a cross-appeal as it was entitled to do, we decline to consider the City's arguments seeking to obtain greater relief than affirmance. Because *both* parties asked us to reverse the MCAC, and we decline to do so, we deem neither party to have "prevailed" and direct that they shall bear their own costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle
/s/ Jane E. Markey